**Simon KATZ, Rose Katz, Volvi Katz, Abraham Katz and Abraham Tusk, Plaintiffs,**

**v.**

**FINANCIAL CLEARING & SERVICES CORPORATION, Defendant.**

**No. 90 Civ. 5713 (TPG).**

United States District Court, S.D. New York.

April 30, 1992.

---

Richard Claman, Seiden, Stempel, Bennett & D'Agostino, New York City, for plaintiffs.

Eva H. Posman, Gaston & Snow, New York City, for defendant.

## OPINION

GRIESA, District Judge.

This is a securities fraud action brought by five securities investors against a clearing brokerage firm. Plaintiffs assert two claims under Section 10(b) of the Securities Exchange Act of 1934, 12 U.S.C. § 78j, and SEC Rule 10b–5 promulgated thereunder. In their first claim, plaintiffs allege that Financial Clearing & Services Corporation fraudulently induced plaintiffs to enter into customer account agreements through an introducing broker that was not duly registered. This will be referred to as the registration issue. The second claim alleg-

es that the liquidation of the Katzes' accounts by Financial Clearing was unauthorized. This will be referred to as the liquidation issue. The issues were the subject of arbitrations before the New York Stock Exchange and confirmation proceedings in New York state court.

Defendant moves to dismiss the complaint under the statute of limitations, under Fed.R.Civ.P. 12(b)(6), and on the grounds of res judicata and collateral estoppel. Defendant also moves to sanction Simon Katz and plaintiffs' former counsel, Richard Claman, under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.

Defendant's motion to dismiss is granted. The first claim is dismissed under Rule 12(b)(6). In addition, both claims are dismissed as barred by the doctrine of res judicata. Defendant's motion for sanctions is denied.

## BACKGROUND

### Undisputed Facts

Defendant is a clearing broker. A clearing broker handles the mechanics of order entry, confirmation, clearance of trades, calculation of margin, and similar activities. It typically does so for an introducing broker which is too small to maintain such operations itself. An introducing broker is a firm that has the initial contact with the public customer. The customer typically places his or her order with the introducing broker.

In early 1985 Financial Clearing entered into a clearing agreement with Brown Knapp & Co., an introducing broker. Pursuant to this agreement, Financial Clearing acted as the clearing broker for public customers that Brown Knapp attracted.

In June 1985 plaintiffs approached Brown Knapp, seeking to open accounts through Brown Knapp in which to trade securities, especially stocks and stock options. Brown Knapp gave plaintiffs account agreements and related documents that Financial Clearing had authorized Brown Knapp to distribute on its behalf.

In June 1985 Simon, Rose and Volvi Katz executed Financial Clearing's customer, margin and option agreements and guarantees and returned them to Brown Knapp. The customer agreements included a provision whereby the customer would make payments for deficiencies in his account to Financial Clearing upon demand. In addition, the customer agreements contained the following arbitration clauses:

> To the extent permitted by law, any controversy arising out of or relating to any of my account(s) with FICS or this agreement except controversies arising under the federal securities laws, shall be submitted to arbitration.... Arbitration must be commenced by service upon the other party of a written demand for arbitration or a written notice of intention to arbitrate, therein selecting the arbitration tribunal. If I do not make such election by registered mail addressed to FICS at its main office within ten (10) days after FICS mails a notice requesting such election, then FICS may make such election on my behalf. Judgment upon any award rendered by the arbitrator(s) shall be final, and may be entered in any court having jurisdiction. This agreement does not constitute a waiver of my right to a judicial forum in instances in which such a waiver would be void under the federal securities laws, nor does it prohibit me from pursuing any claim arising under the federal securities laws in any court of competent jurisdiction.

In November 1985 Abraham Katz and Abraham Tusk signed, among other things, three guarantee agreements each with Financial Clearing, guaranteeing the accounts of Simon, Rose and Volvi Katz, respectively. These guarantee agreements contained the following arbitration clauses:

> Any controversy between you [Financial Clearing] and the Guarantor [i.e. Katz or Tusk] arising out of or relating to this contract or the breach thereof shall be settled by arbitration.

On "Black Monday," October 19, 1987, the stock market crashed. Brown Knapp ceased operations on that day. Three days later, on October 22, 1987, Financial Clearing liquidated plaintiffs' accounts. Finan-

cial Clearing claimed that after such liquidation, there was a $200,000 deficit. Thereafter, in February 1988, Financial Clearing commenced two arbitrations before the New York Stock Exchange. One was against Simon, Rose and Volvi Katz and will be referred to as the Katz arbitration. The other was against Abraham Katz and Abraham Tusk and will be referred to as the Katz–Tusk arbitration. As defendant has moved in part based upon the res judicata effect of these proceedings, it is necessary to examine them in detail.

*The Katz Arbitration*

In its Statement of Claim against Simon, Rose and Volvi Katz dated February 25, 1988, Financial Clearing sought to recover the alleged deficits in plaintiffs' accounts. On May 18, 1988 the Katzes served an Answer and Counterclaims. The Katzes admitted "that arbitration hereunder is appropriate as a result of entering into customer agreements with claimant" and did not, in any way, attempt to reserve a right to bring claims under the federal securities laws.

In the first counterclaim, the Katzes asserted that during the period they maintained their accounts with Brown Knapp, "trades were made in the Accounts without authorization, in error, for incorrect prices and in direct contravention of orders." The Katzes asserted that while their accounts were often out of margin, no margin calls were made and the accounts were not liquidated:

> Had claimant dealt with the Accounts in a proper and lawful manner, they would not have been liquidated in a panic, would not have been in a deficit position and would have had an equity position in excess of $500,000.

Par. 9.

In their second counterclaim, the Katzes claimed that Financial Clearing earned $1,000,000 in commissions from them and that this money should be returned. Pars. 10–11. In their third counterclaim, the Katzes averred that on

> and after October 19, 1987, claimant, acting in panic, confusion, unprofessionally

and without any justification therefor, effected transactions in the Accounts which wiped out the equity contained in the Accounts as well as creating a debit balance.

Par. 12.

The fourth counterclaim addressed a claim by Financial Clearing that the Katzes had guaranteed the accounts of two other investors. The arbitration panel ultimately found in favor of the Katzes on this issue. As it is not raised in the federal action, no further mention of it need be made.

The Katzes demanded an award of $500,000 on their first, third and fourth counterclaim, and requested the return of $1,000,000 in commissions on their second counterclaim.

After twelve sessions of presentation of testimony and evidence, the NYSE arbitration panel rendered its decision on December 18, 1989. The panel awarded Financial Clearing $212,000 against the Katzes with respect to the claims relating to debit balances in their accounts, and it awarded the Katzes $34,000 on their counterclaims against Financial Clearing.

The panel issued a brief decision, with a Case Summary indicating that the counterclaims alleged "unauthorized trades, imprudent liquidation and breach of agreement." The decision stated the net damages.

*Action to Confirm the Katz Arbitration*

The registration issue did not arise until the next stage of litigation. On January 26, 1990 Financial Clearing petitioned the New York State Supreme Court for an order confirming the arbitration award against the Katzes.

On March 15, 1990 *The Wall Street Journal* reported that a criminal investigation of Brown Knapp was underway. The article reported allegations that certain of Brown Knapp's brokers had arranged for other people to take their Series 7 exam, the exam required for a person to be licensed as a broker by the New York Stock Exchange.

The day after the article was printed, the Katzes filed a cross-petition to vacate or

modify the arbitration award in the New York Supreme Court. On April 3, 1990 Simon Katz filed a reply affidavit with the court in the cross-petition, to which he attached *The Wall Street Journal* article. Simon Katz asserted that the three brokers mentioned in the article

> were the individuals with whom I dealt at Brown Knapp. Accordingly, any transactions which were performed through Brown Knapp, my introducing broker with the petitioner herein, are void.... Accordingly, I am entitled to the return of all the equity in my account. The clearing member, which is petitioner herein, cannot have executed any trades through brokers who were not registered. The testimony at the hearing, showed that the orders for the Katz accounts, were placed by individuals at Brown Knapp.

Reply ¶¶ 1–3.

On July 6 Justice Preminger granted Financial Clearing's petition to confirm the arbitration award against Simon, Rose and Volvi Katz. The decision did not mention *The Wall Street Journal* article or the registration issue.

On July 18 the Katzes moved for leave to reargue the court's decision. Their attorney, Richard Claman, raised the issue of discovery needed on order tickets as his first basis of reargument. He continued:

> The second basis for reargument is that, respectfully, the Court apparently did not take note of a substantial argument, which respondents discovered only in time to include in a reply affidavit. As shown further ... all contracts between respondents and FICS should be avoided as a matter of public policy, because the introducing brokers who induced those contracts were not duly registered—and procured their apparent registration only by fraud, and FICS, as clearing broker, should in the present circumstances be bound by that fundamental illegality.

Claman Aff. ¶ 3.

The court heard the Katzes on reargument, but reconfirmed its decision. An Order and Judgment was entered on October 5, 1990.

*The Katz–Tusk Arbitration and Action to Confirm*

Financial Clearing also commenced an arbitration against Abraham Katz and Abraham Tusk in February 1988, seeking recovery under their guarantees to pay any debit balances in the Katzes' accounts. The Katz-Tusk counterclaims, which were virtually identical to those filed by the three Katzes, were filed on May 18. The counterclaims asserted that the liquidation of the Katzes' accounts had been "panicked", incompetent, imprudent and unauthorized.

On January 4, 1989 Abraham Katz and Abraham Tusk stipulated that if the Katzes were found in the Katz arbitration to owe Financial Clearing money on the Katz accounts, Katz and Tusk would pay such indebtedness on demand, unless the Katzes had already paid it. The arbitration was adjourned pending the arbitration against Simon, Rose and Volvi Katz.

The first session in the Katz–Tusk arbitration did not occur until April 25, 1989, at which time *The Wall Street Journal* article had already been printed. At this first session, the Katz–Tusk attorney informed the NYSE panel of both the liquidation and also the registration issues and argued that all contracts should be cancelled. At the session on April 29, the attorney again raised the registration issue before the panel and stated that the issue

> can bring into question the basic validity of any agreements that were signed by ... any customer, and ... can bring into question acts of Financial Clearing also.

On May 29 the NYSE panel awarded Financial Clearing in the Katz–Tusk arbitration the balance of the claim against the Katzes, or $178,000. Again, the Case Summary indicated that the panel considered the counterclaim alleging "wrongful liquidation." No mention is made of the registration issue in the panel's short written recitation of its decision.

On June 11, 1990 Financial Clearing commenced a special proceeding in the Supreme Court of New York, requesting an order confirming the Katz-Tusk arbitration

award. Tusk and Abraham Katz filed a cross-petition to vacate the arbitration award, based upon both the registration and also the liquidation issues. They again argued that the guarantees should be voided because of the allegation that certain Brown Knapp brokers were not properly licensed.

Justice Preminger decided the petition to confirm the Katz–Tusk arbitration on August 9, 1990. In her opinion, she directly addressed the registration issue:

> Respondents alternatively contend that their guarantees were null and void because they were induced to execute them by unregistered brokers. These brokers were not employed by petitioner, but by Brown, Knapp & Co., the introducing brokerage firm. It is unclear, however, what (if any), misrepresentations were made to respondents by these (allegedly) unregistered brokers, or how respondents were fraudulently 'induced' in any way to execute the guarantees. Under these circumstances there is insufficient basis to void the guarantees on public policy grounds.

Accordingly, Justice Preminger granted Financial Clearing's motion to confirm the Katz–Tusk arbitration award.

### The Federal Action

In this action, plaintiffs assert two claims against Financial Clearing under SEC Rule 10b–5. Plaintiffs allege in their first 10b–5 claim that defendant fraudulently induced "the Katzes to enter into customer account agreements through an introducing broker that was not duly registered." Compl. ¶ 26. Plaintiffs request restitution of the commissions collected by defendants in the amount to $1 million. In their second 10b–5 claim, plaintiffs allege that the closing of their accounts was unauthorized. Compl. ¶ P 28–29. Plaintiffs claim damages of the difference in their accounts had they not been liquidated, and the purported account deficits, which allegedly amount to $900,000.

The first three paragraphs of the complaint summarize the issues presented:

1. This is an action under the federal securities laws, concerning accounts that the Katzes, at the inducement of an introducing brokerage firm named Brown Knapp & Co. ("BK"), were led to open, for purposes of clearing stock and stock option transactions, with FICS, a clearing brokerage firm.

2. The Katzes were induced to open the accounts in 1985 by the representation that BK was a duly registered introducing broker—which, the Katzes have recently first discovered, through a March 1990 report in *The Wall Street Journal* of criminal investigation of BK's principals, was false, and FICS, upon information and belief, either knew of that falsehood or recklessly disregarded indications thereof.

3. The accounts were purportedly liquidated by FICS on October 22, 1987—without consent of the Katzes, notwithstanding that the accounts had a substantial equity balance, and in an arbitrary and senseless manner, causing the Katzes a substantial loss.

The only allegation in the complaint relating to the relationship between Brown Knapp and Financial Clearing is the allegation that Financial Clearing,

> knew or was reckless in failing to have discovered that early in 1985, when it entered into an agreement with BK establishing a clearing arrangement, in which BK represented that it was duly licensed, it was not licensed at all; upon information and belief, FICS knew or was reckless in failing to have discovered that BK had been terminated by its former clearing broker; and Simon Katz, on several occasions, saw FICS employees visiting the offices of BK, and heard them screaming that they would 'close the joint.'

Compl. ¶ 13.

### DISCUSSION

#### Rule 12(b)(6)

■ Plaintiffs' first claim, on the registration issue, fails to state a claim for relief under Fed.R.Civ.P. 12(b)(6). A clearing broker performing merely its processing functions cannot be held liable for fraudu-

lent misrepresentations made by an introducing broker to that introducing broker's customers. *Ross v. Bolton,* 904 F.2d 819 (2d Cir.1990).

■■■ An introducing broker is not acting as an agent of the clearing broker when the introducing broker makes fraudulent misrepresentations to its customers. *Dillon v. Militano,* 731 F.Supp. 634, 639 (S.D.N.Y.1990) (clearing broker does not owe a fiduciary duty to the customers of an introducing broker). Neither primary nor aiding and abetting liability under the securities laws attaches to a clearing broker who merely clears trades for an introducing broker. *Dillon v. Militano, supra; Lester v. Basner,* 676 F.Supp. 481, 484 (S.D.N.Y.1987); *Baum v. Phillips, Appel & Walden, Inc.,* 648 F.Supp. 1518, n. 18 (S.D.N.Y.1986), *aff'd Asch v. Phillips, Appel & Walden, Inc.,* 867 F.2d 776 (2d Cir.), *cert. denied,* 493 U.S. 835, 110 S.Ct. 114, 107 L.Ed.2d 75 (1989).

■■■ No facts have been pled which would create an exception to this general rule. The allegation that Simon Katz, at an unspecified time, saw Financial Clearing employees visiting the offices of Brown Knapp screaming they would "close the joint," is insufficient to show that Financial Clearing was in a special position with respect to knowledge of Brown Knapp. No misrepresentations by defendant have been alleged.

■■■ The fact that certain of Brown Knapp's brokers may have had someone else take the Series 7 exam for them is not the type of fraud that a clearing broker is in a position to discover during the ordinary course of business. *Cf. Faturik v. Woodmere Securities, Inc.,* 431 F.Supp. 894, 896–97 (S.D.N.Y.1977) (denying a clearing broker's motion to dismiss because facts alleged, indicating a close relationship between introducing and clearing broker, suggested the clearing broker may have had notice of churning by virtue of its executive and record keeping function). Plaintiffs' conclusory allegations of scienter are also insufficient under Fed.R.Civ.P. 9(b), because plaintiffs have failed to provide any factual basis for their claims.

In conclusion, plaintiffs have alleged no facts sufficient to support their first claim for relief.

*Res Judicata*

The next question presented is whether the arbitration and confirmation proceedings preclude further litigation of both claims under the doctrines of res judicata. An alternative ground for dismissal of the first claim is here considered to forestall the possibility that plaintiffs will merely file an amended complaint correcting the 12(b)(6) problems.

While the Supreme Court has expressly left undecided the issue of whether an arbitrator's decision that has been reviewed by a state court is always entitled to preclusive effect, *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 222–23, 105 S.Ct. 1238, 1243–44, 84 L.Ed.2d 158 (1985), New York federal and state courts have held that a "decision by arbitrators is as binding and conclusive under the doctrine of res judicata and estoppel as the judgment of a court." *James L. Saphier Agency, Inc. v. Green,* 190 F.Supp. 713, 719 (S.D.N.Y.), *aff'd on other grounds,* 293 F.2d 769 (2d Cir.1961) (citations omitted). *See also American Renaissance Lines, Inc. v. Saxis Steamship Co.,* 502 F.2d 674, 679 (2d Cir.1974) (citing *James L. Saphier*); *In re Ranni,* 58 N.Y.2d 715, 717, 458 N.Y.S.2d 910, 444 N.E.2d 1328 (1982) ("It is settled that the doctrine of *res judicata* is applicable to arbitration awards and may serve to bar the subsequent relitigation of a single issue or an entire claim.").

In addition, other recent Supreme Court decisions have established a strong preference for arbitration, even of federal law claims. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 238, 107 S.Ct. 2332, 2343, 96 L.Ed.2d 185 (1987) (holding that a written arbitration agreement between a customer and a broker is enforceable as to claims under the Securities Exchange Act); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (holding that international antitrust claims are arbitrable despite exclusive fed-

eral antitrust jurisdiction). The Supreme Court has conclusively decided that claims under the 1934 Act may be submitted to arbitration, pursuant to written arbitration agreements. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

█ Plaintiffs argue that they may bring their federal securities claims because the Financial Clearing arbitration clauses state that any controversy arising out of the account or the agreement shall be submitted to arbitration "except controversies arising under the federal securities laws." Plaintiffs rely on a recent case in which Judge Leisure states that the language in Financial Clearing's arbitration clause "unambiguously creates a substantive securities claim exception to the agreement to arbitrate." *Stander v. Financial Clearing & Services Corp.,* 718 F.Supp. 1204, 1206 (S.D.N.Y.1989).

Despite the seeming breadth of Judge Leisure's pronouncement, plaintiffs' argument is misguided. The exclusions for federal securities claims would have allowed plaintiffs to defeat a motion to compel arbitration of their claims. Once having submitted to arbitration, however, plaintiffs are estopped from arguing that issues actually litigated may be raised again. *See Nat'l Ben. Fund for Hosp. & Health Care Employees v. Presbyterian Hosp.,* 448 F.Supp. 136, 138 (S.D.N.Y.1978) ("the possibility that the Union could not have been compelled to arbitrate this dispute because ERISA, like the Securities Acts ... protects a party's right to assert claims ... in court, became immaterial once the parties in fact submitted their dispute to arbitration"). *See also C.D. Anderson & Co. v. Lemos,* 832 F.2d 1097, 1099 (9th Cir.1987) (claims in federal court under the federal securities acts are barred by prior arbitration award when plaintiff submitted its claims to arbitration without reserving its right to bring federal securities action in court).

Even in the case relied on by plaintiffs, Judge Leisure held only that a customer could avoid arbitration of federal claims when seeking to pursue a federal action filed *prior* to the commencement of arbitration. *Stander v. Financial Clearing & Services Corp.,* 718 F.Supp. 1204, 1206 (S.D.N.Y.1989).

Plaintiffs willingly submitted to arbitration and even admitted in their answer to the proceedings that arbitration under the customer agreements was "appropriate." Under New York law, if an adversary does not move to stay arbitration upon being served with a notice of arbitration, he will be precluded thereafter from objecting under C.P.L.R. § 7503(c) to the arbitrability of the issues. *See also Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability").

█ The court finds that both 10b–5 claims are barred by the doctrine of res judicata. The "common nucleus of facts" in both state and federal proceedings is the alleged improper liquidation of plaintiffs' accounts. *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *In re Teltronics Services, Inc.,* 762 F.2d 185, 193 (2d Cir.1985).

█ As to the registration issue, it is immaterial that the issue, such as it is, was not raised until the confirmation proceedings in the Katz arbitration. Res judicata binds not only as to every matter offered and received, but also as to any other admissible matter which might have been offered for that purpose. *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). In the Katz proceeding, the registration issue was not raised at the arbitration because *The Wall Street Journal* article had not appeared; but the issue was brought to the court's attention in opposing confirmation of the arbitration award. In the Katz–Tusk matter the registration issue was litigated both in the arbitration and in the confirmation action.

Plaintiffs contend that they did not have a "full and fair" opportunity to litigate this issue in the prior proceedings, within the meaning of New York law, because the arbitrators refused to compel Financial Clearing to turn over the liquidation "order tickets". This argument is insufficient, given the extensive prior proceedings addressing precisely this issue. The court concurs in Justice Preminger's judgment that the,

> speculative nature of the demand for the 'order tickets' is clear from the hearing transcript, while the burden production of the tickets would have placed on petitioner [Financial Clearing], in light of the vast number of these documents generated daily, was undisputed.

The court finds that the prior proceedings provided a full and fair opportunity to litigate the very matter which is the subject of this action. Both 10b–5 claims are barred under the doctrine of res judicata.

## CONCLUSION

In conclusion, defendant's motion to dismiss is granted. Plaintiffs' first claim for relief is dismissed under Fed.R.Civ.P. 12(b)(6). Both claims are also dismissed under the doctrine of res judicata. Defendant's motion for sanctions is denied.

SO ORDERED.