**Paul E. SIEGEL, Plaintiff,**

v.

**DAIWA SECURITIES CO. LTD., Koji Yoneyama, Yuji Rai and Hiroshi Tsunoda, Defendants.**

No. 91 Civ. 8668 (TPG).

United States District Court, S.D. New York.

Jan. 6, 1994.

Epstein, Becker & Green, P.C., by Ronald M. Green, Patricia A. Murphy, and William J. Milani, New York City, for defendants.

Wisehart & Koch, by Arthur M. Wisehart and Michael H. Prince, New York City, for plaintiff.

## OPINION

GRIESA, Chief Judge.

Plaintiff sues alleging race and national origin discrimination as well as tortious interference with contractual rights.

The action arises out of plaintiff's employment with Daiwa Securities America Inc. ("Daiwa America"). However, he is not suing Daiwa America in this action. The action is brought against Daiwa America's parent, Daiwa Securities Co., Ltd. ("Daiwa Japan"); Koji Yoneyama, a director of Daiwa Japan, who was president of Daiwa America during plaintiff's employment, and is now chairman of Daiwa America; Yuji Rai, an officer of Daiwa Japan; and Hiroshi Tsunoda, who was plaintiff's supervisor at Daiwa America and is now with Daiwa Japan.

Plaintiff previously initiated an arbitration against Daiwa America, Yoneyama and Tsunoda. The arbitrators decided against plaintiff on all issues.

Defendants move to confirm the arbitration award and to dismiss the present action on the ground that it is barred by the arbitration. Also, they seek sanctions against plaintiff for bringing the present action.

Plaintiff has filed a cross-motion, requesting an order "striking" defendants' motion, rescinding the arbitration agreement, and granting other forms of relief.

As to the motion to confirm the arbitration award, only two of the defendants—Yoneyama and Tsunoda—were parties to the arbitration. The motion to confirm will be treated as their motion, and it is granted. In addition, all defendants are entitled to a ruling that the arbitration award bars plaintiff's claims in the present action and that the action should be dismissed. Plaintiff's motion is denied in its entirety.

Defendant's application for sanctions is denied.

## FACTS

Daiwa America hired plaintiff in 1989 as its vice president in charge of real estate investment banking. Plaintiff worked in that capacity until February 1990 when his employment was terminated. Plaintiff alleged in an arbitration proceeding, and now alleges in this lawsuit, that he was terminated for discriminatory reasons and in violation of his contract of employment.

### The Arbitration

In May 1990 plaintiff submitted his dispute to arbitration under the auspices of the National Association of Securities Dealers ("NASD"), pursuant to the agreement contained in his application to be a member of the NASD (the so-called Form U-4). The U-4 provides that the applicant will arbitrate "any dispute, claim or controversy that may arise between ... [the applicant] and ... [the applicant's] firm, or a customer or any

other person, that is required to be arbitrated under the rules ... of the [NASD]." Section 8 of the NASD Code of Arbitration states that arbitrable issues include any dispute "arising out of or in connection with the business of any member." According to the Code, such disputes may occur between a member and another member, between a member and a person associated with a member, or between people associated with members.

The respondents in plaintiff's arbitration claim were Daiwa America; Koji Yoneyama, then president of Daiwa America; Hiroshi Tsunoda, plaintiff's supervisor at Daiwa America; Phillip Zachary, executive vice president of Daiwa America; and Alan Rosenblum, general counsel of Daiwa America. Both plaintiff and the respondents were subject to arbitration under the NASD Code.

Plaintiff's Statement of Claim contained seven counts. Two additional allegations were presented in later submissions to the arbitrators. Although they were not formally presented as claims, they are contained in the following list as items eight and nine. The allegations in the seven counts in the Statement of Claim and in the two additional items later added were as follows:

1) Daiwa America terminated plaintiff's employment wrongfully to avoid paying him bonuses and commissions generated by a real estate investment plan plaintiff developed, which involved an arrangement with Goldman Sachs as well as other real estate deals, having an anticipated value of $1.2 billion. This claim was alleged against Daiwa America and Rosenblum.

2) Daiwa America terminated plaintiff's employment for racially and ethnically discriminatory reasons. Plaintiff is a Jewish American and Daiwa America is a Japanese-owned company. This claim was alleged against Daiwa America.

3) Plaintiff was defamed by the circulation of a letter of Reliance Group Holdings, Inc. attacking plaintiff. This claim was alleged against all respondents.

4) Plaintiff's personal belongings were wrongfully withheld after his employment was terminated. This claim was alleged against Daiwa America.

5) Plaintiff's privacy was invaded by the inspection of the personal belongings withheld. This claim was alleged against all respondents.

6) Plaintiff's business arrangements following his termination were tortiously interfered with. This claim was alleged against all respondents.

7) The contract to pay plaintiff 15% of revenues generated by his business dealings was breached. This claim was alleged against Daiwa America.

8) Plaintiff was threatened with business ruin if he pursued an arbitration remedy. This allegation was contained in the Reply to Respondent's Counterclaim (p. 19). The allegation was that Yuji Rai (not a respondent) made the threat on behalf of all respondents.

9) Plaintiff was discriminated against during his employment, as distinct from discriminatory termination, by receiving insulting comments and gestures and by having less qualified Japanese persons promoted over him. This allegation was contained in plaintiff's Post–Hearing Brief (pp. 32–34). The allegation was made against Daiwa America and Tsunoda.

Respondents asserted a counterclaim against plaintiff, the details of which are not important for present purposes.

During the course of the arbitration proceeding, pre-hearing conferences were held on 12 days. Hearing sessions were held on 41 days commencing April 24, 1991 and concluding May 29, 1992.

On September 24, 1992 the three arbitrators issued their decision denying all of plaintiff's claims and also denying respondents' counterclaim.

As to plaintiff's claims, the arbitrators set forth a full statement of the positions of the two sides and the salient facts. The arbitrators ruled that plaintiff had "failed to carry his burden with respect to any of his claims."

It is clear that the arbitrators' ruling covered the seven claims presented in the Statement of Claim. These seven claims were specifically described in the decision. The arbitrators did not expressly mention, or rule upon, the eighth and ninth items in the above list.

The arbitrators fixed "forum fees" in the amount of $145,000. Plaintiff was assessed $15,000 and Daiwa America was assessed $130,000.

### The Complaint in the Lawsuit

Plaintiff commenced an action in New York State Supreme Court in November 1991, soon after concluding his case-in-chief before the arbitration panel. In December 1991 the case was removed to the federal court.

Although the complaint in the lawsuit relates to the same basic alleged problems with Daiwa America as were the subject of the arbitration, Daiwa America is not named as a defendant. The principal defendant in the lawsuit is Daiwa Japan, the parent company of Daiwa America. Two persons who were named as respondents in the arbitration— Yoneyama and Tsunoda—are defendants in the lawsuit. The allegations against them in the lawsuit are that their actions were taken on behalf of Daiwa Japan. Yuji Rai, who was not a respondent in the arbitration, is named as a defendant in the lawsuit, and is alleged to have acted on behalf of Daiwa Japan. Two of the respondents in the arbitration—Zachary and Rosenblum—are not named as defendants in the suit.

The complaint contains 112 paragraphs plus the prayer for relief. There are four counts. Count I is entitled "Discriminatory Acts in Violation of the New York Human Rights Law"; Count II, "Intentional Interference with Plaintiff's Contractual and Advantageous Relationships"; Count III, "Violation of 42 U.S.C. § 1981"; Count IV, "Violation of 42 U.S.C. § 1985(3)".

In order to compare the claims in the complaint with the claims in the arbitration, the factual allegations must be analyzed. Thus analyzed, there are eight basic claims in the complaint, alleging that:

1) All defendants interfered with plaintiff's contractual relationship with Daiwa America, thus depriving plaintiff of the benefit of the Goldman Sachs arrangement and the other real estate deals, and causing Daiwa America to terminate plaintiff in violation of his contractual rights.

2) All defendants caused the discriminatory termination of plaintiff, and defendants Yoneyama and Tsunoda and Rai personally committed this wrongdoing.

3) All defendants instigated the circulation of defamatory comments about plaintiff in the investment banking community, some of which were published in newspapers and newsletters and some of which were contained in reports to the NASD. There is no specific reference to the Reliance Group letter in the complaint. In fact, there is no specific allegation as to the nature and content of the asserted defamation.

4) All defendants caused plaintiff's personal property to be withheld after his termination.

5) All defendants interfered with plaintiff's employment prospects following his termination.

6) All defendants interfered with Daiwa America's commitment to pay plaintiff 15% of the revenues generated by plaintiff.

7) Yuji Rai, on behalf of Daiwa Japan, threatened plaintiff with business ruin if he pursued arbitration.

8) Tsunoda and Rai, on behalf of Daiwa Japan, discriminated against plaintiff during his employment, by improper comments and gestures and by promoting less qualified Japanese over plaintiff.

As already noted, the lawsuit was commenced before the arbitration had been completed. When questioned about this by the arbitration panel, plaintiff stated: "I intend to abide by the award or lack of award this panel comes up with."

### Comparison of Arbitration Claims and Claims in Complaint

The similarities and differences between plaintiff's claims in the arbitration and his

claims in the lawsuit are readily apparent from the summaries presented above. Only one of the subjects of the arbitration is entirely missing from the lawsuit—*i.e.,* the claim of invasion of privacy. If this claim in the arbitration is put aside, all the claims in the lawsuit correspond in some degree to claims in the arbitration.

The first claim in the lawsuit, relating to the allegations about Goldman Sachs and other real estate deals and wrongful termination, involves the same subject matter as the first claim in the arbitration. However, the claim in the arbitration was against Daiwa America for breach of contract, and this claim also named respondent Rosenblum as participating in that wrongdoing. The complaint in the lawsuit contains precisely the same basic allegations, but asserts the theory that Daiwa Japan, and the other defendants on behalf of Daiwa Japan, wrongfully caused the violations of plaintiff's contractual rights.

The same pattern is followed with respect to the second, third, and fourth claims in the lawsuit. They deal with the same subject matter as the second, third and fourth claims in the arbitration, the distinction being that the allegations in the arbitration were against Daiwa America and persons acting on its behalf, whereas the allegations in the lawsuit are that Daiwa Japan and persons acting on its behalf caused the wrongs committed by Daiwa America. As to the second item in the lawsuit, as already noted, the claim of defamation in the arbitration related to the Reliance Group letter, whereas the allegations in the lawsuit are entirely general with no specific details alleged.

The fifth, sixth, seventh and eighth claims in the lawsuit correspond to the sixth, seventh, eighth and ninth items in the arbitration. Again, the basic factual allegations are the same in the lawsuit as they were in the arbitration, the difference being that the claims in the arbitration were against Daiwa America, whereas the theory of the allegations in the lawsuit is that Daiwa Japan caused the wrongdoing of Daiwa America. It will also be recalled that the eighth and ninth items involved in the arbitration were not actually claims made in the Statement of Claim, and were not expressly decided by the arbitrators.

## DISCUSSION

### I. Confirmation of Arbitration Award

Although all defendants have moved for confirmation of the arbitration award, only defendants Yoneyama and Tsunoda were parties to the arbitration. The motion to confirm will be treated as their motion. For reasons to be described, plaintiff has made no cogent argument as to why the arbitration award is not entirely valid. The award is therefore confirmed.

### II. The Arbitration Award as a Bar to the Lawsuit

Plaintiff argues that the arbitration award is not a bar to the present action because both the arbitration and the award are invalid.

■ Plaintiff asserts that the arbitration agreement in the Form U–4 cannot be enforced against him, and that in any event he cannot be required to arbitrate claims under the federal civil rights statutes and the state human rights law. These arguments are entirely beside the point. Plaintiff was not required to arbitrate against his will. This is not a case where the other side to the arbitration agreement is seeking to compel plaintiff to arbitrate. Plaintiff voluntarily initiated the arbitration. Moreover, even after he had brought the present lawsuit, he told the arbitrators that despite the lawsuit he would abide by their ruling.

It is clear beyond any question that the arbitration and the arbitration award were and are entirely valid.

Plaintiff argues, in the alternative, that even if the arbitration award is valid, the award is not a bar to the lawsuit because the suit involves new issues and new parties.

■ The familiar law is that the findings of arbitration panels can bar claims in a court

proceeding under the doctrines of res judicata and collateral estoppel. *Khander v. Elfenbein*, 943 F.2d 244 (2d Cir.1991); *Katz v. Financial Clearing & Servs. Corp.*, 794 F.Supp. 88, 94 (S.D.N.Y.1992); *In re Ranni*, 58 N.Y.2d 715, 717, 458 N.Y.S.2d 910, 911, 444 N.E.2d 1328, 1329 (1982) ("It is settled that the doctrine of res judicata is applicable to arbitration awards and may serve to bar the subsequent relitigation of a single issue or an entire claim").

■ Res judicata bars the relitigation of issues previously litigated and resolved. It also precludes litigation of claims that could have been raised in the earlier proceeding, even though not actually raised. Res judicata applies where there are the same parties in the new proceeding as in the former, or parties in privity with those in the former proceeding. *Katz*, 794 F.Supp. at 95.

■ Plaintiff contends that res judicata does not apply because some of the parties in the lawsuit were not parties to the arbitration. It is true that Daiwa America, the principal party in the arbitration, is not a defendant in the lawsuit, whereas Daiwa Japan is the main defendant. Although two of the individual defendants—Yoneyama and Tsunoda—were respondents in the arbitration, defendant Yuji Rai was not in the arbitration. However, the well-established rule about privity governs the present case. Daiwa Japan is clearly in privity with Daiwa America, and the same must be said of Yuji Rai.

■ Plaintiff also argues that the issues are different because the gravamen of the claims in the arbitration was that Daiwa America breached its contractual commitments to plaintiff and committed other wrongs against plaintiff, whereas the thrust of the complaint in the lawsuit is that Daiwa Japan wrongly interfered with Daiwa America's contractual obligations and in other ways caused the wrongs charged against Daiwa America in the arbitration.

It would seem a matter of elementary common sense that, if the arbitrators found that plaintiff had failed to prove the wrongs alleged against Daiwa America, this would leave no room to bring a lawsuit charging Daiwa Japan with causing those wrongs. Whether this results, as a technical matter, from the application of res judicata or collateral estoppel is a matter of possible theoretical interest. However, the result is clear, and that is that the claims in the lawsuit are barred.

■ This ruling not only covers the claims in the lawsuit expressly decided by the arbitrators, but also embraces the two claims not expressly decided. These are the claims of threats relating to the arbitration and of discrimination during employment. It would not be unreasonable to interpret the arbitration ruling as impliedly rejecting these two claims. However, it can at least be said that plaintiff had the opportunity to formally include the claims in his Statement of Claim or an amended Statement of Claim so that they would have been clearly presented for decision by the arbitrators. Thus, these claims were either presented and decided, or could have been presented and decided, in the arbitration. Thus plaintiff is barred from pursuing them in the lawsuit.

■ Plaintiff contends that res judicata does not apply, at least as to some claims, where different legal theories are asserted in the lawsuit from what was relied on in the arbitration. But it is established law that, where two successive legal proceedings involve the same factual claims, res judicata applies despite the change of legal theory. *Cemer v. Marathan Oil Co.*, 583 F.2d 830, 832 (6th Cir.1978); 1B James W. Moore et al., Moore's Federal Practice ¶ 0.410[1] (2d ed. 1988).

## CONCLUSION

The court treats defendants' motion to confirm the arbitration award as being made by the two defendants who were parties to the arbitration—Yoneyama and Tsunoda—and as such the motion is granted. The court grants the motion of all defendants to dis-

miss the action as barred by the arbitration and the arbitration award.

Plaintiff's motion to rescind the arbitration agreement and for other relief is denied.

Although the suit is without merit, the situation does not rise to the level of bad faith or wholly unreasonable pleading. Defendants' application for sanctions is denied.

SO ORDERED.