UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 94-1658

KENNETH P. WOLF,

Plaintiff, Appellant,

v.

GRUNTAL & CO., INC.,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]



Before

Cyr and Stahl, Circuit Judges,

and DiClerico,* District Judge.



George S. Isaacson, with whom Brann & Isaacson and Peter D. Lowe
were on brief for appellant.
Joseph P. Moodhe, with whom Debevoise & Plimpton, Ariadne D.
Makris, John P. McVeigh, Preti, Flaherty, Beliveau & Pachios and
Lionel G. Hest were on brief for appellee.



January 25, 1995




*Chief Judge of the District of New Hampshire, sitting by
designation.

CYR, Circuit Judge. Plaintiff Kenneth P. Wolf appeals CYR, Circuit Judge. 

a summary judgment order dismissing his Rule 10b-5 claim against

defendant-appellee Gruntal & Co. ("Gruntal"), a securities

brokerage firm, for fraudulently mismanaging Wolf's investment

accounts in violation of Section 10(b) of the Securities and

Exchange Act of 1934, 15 U.S.C. 78j(b). As the district court

erred in ruling that Wolf's claim was precluded by an earlier

arbitral award, we vacate the judgment and remand for further

proceedings.

I I

BACKGROUND BACKGROUND

Viewed in the light most favorable to appellant Wolf,

see Velez-Gomez v. SMA Life Assurance Co., 8 F.3d 873, 874-75

(1st Cir. 1993), the summary judgment record discloses the

following facts. In March 1988, Wolf opened cash and margin

accounts with Gruntal at its branch office in Portland, Maine.

Wolf signed a Customer Agreement ("Agreement") which contained an

arbitration clause: "[a]ny controversy between [Gruntal] and

[Wolf] arising out of or relating to this contract or the breach

thereof, shall be settled by arbitration. . . . Notwithstanding

the foregoing, arbitration shall not be mandated on claims

asserting violation(s) of Federal securities/commodities laws."

Agreement 16 (emphasis added). Paragraph 17 further provided

that "th[e] agreement and its enforcement would be governed by

2

New York law without giving effect to external law." Id. 17.

Thereafter, between 1988 and 1990, a Gruntal agent fraudulently

mismanaged Wolf's accounts, causing a loss approximating $1

million.

In December 1991, Wolf initiated the present action

against Gruntal in the United States District Court for the

District of Maine. The complaint asserted seven state-law

claims, as well as one federal claim under the Securities and

Exchange Act of 1934, 15 U.S.C. 78j(b); Rule 10b-5, 17 C.F.R.

3

240 (1993).1 Gruntal moved to stay the district court proceed-

ings pending arbitration on all eight claims.

The district court ruled that the arbitration clause in

the Agreement unambiguously permitted Wolf to forego arbitration

and to litigate the Rule 10b-5 claim in district court, but that

the seven state-law claims were arbitrable. Since no party had

sought to compel arbitration, however, the district court refused


1Rule 10b-5, promulgated pursuant to section 78(j)(b),
provides in pertinent part:

It shall be unlawful for any person, directly or in-
directly, by the use of any means or instrumentality of
interstate commerce, or of the mails, or of any nation-
al securities exchange,

(a) to employ any device, scheme, or artifice to
defraud,

(b) to make any untrue statement of a material fact or
to omit to state a material fact necessary in order to
make the statements made, in the light of the circum-
stances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of busi-
ness which operates or would operate as a fraud or
deceit upon any person,

in connection with the purchase or sale of any securi-
ty.

17 C.F.R. 240 (1993).
The Rule 10b-5 claim alleged that Gruntal's fraudulent
scheme was comprised of three basic components: (1) Gruntal
misrepresented that its investments would comport with Wolf's
low-risk investment objectives; (2) Gruntal fraudulently extended
the one-month term of Wolf's margin account, without Wolf's
knowledge or consent, in order to promote Gruntal's interests
(i.e., by using Wolf's credit to manipulate the price of stock
(Secor/Novametrix) in waging its own "trading war"); and (3)
Gruntal repeatedly concealed the unauthorized margin account
activity by using Wolf's investment and "safekeeping" assets
(e.g., treasury bills) as collateral for his burgeoning margin
account indebtedness to Gruntal.

4

to stay its proceedings on the Rule 10b-5 claim pending arbitra-

tion and the parties proceeded with discovery.

In March 1993, Wolf submitted a unilateral demand for

arbitration on the seven state-law claims; in December 1993, he

recovered a $200,000 arbitral award against Gruntal. Gruntal

thereafter moved for summary judgment in the district court,

contending that the final arbitral award on the state-law claims

precluded the Rule 10b-5 claim under the doctrine of res judica-

ta. 

The district court granted summary judgment. Wolf v.

Gruntal & Co., No. 91-426-P-H, 1994 U.S. Dist. LEXIS 7627 (D. Me.

May 24, 1994). It correctly concluded that the Rule 10b-5 claim

and the seven state-law claims arose out of the same "operative

nucleus of fact" (i.e., the ongoing account mismanagement by

Gruntal). Id. at *4 (citing Kale v. Combined Ins. Co. of Am.,

924 F.2d 1161, 1166 (1st Cir.), cert. denied, 112 S. Ct. 69

(1991)). As "Gruntal [had] made clear that it would accept

arbitration of the [Rule 10b-5] claim," the district court

envisioned no "jurisdictional obstacle" in the event Wolf had

elected to submit the Rule 10b-5 claim to arbitration. Conse-

quently, the court reasoned, the final arbitral award on the

state-law claims precluded the Rule 10b-5 claim because Wolf

"could have" presented the federal claim to arbitration. Id. at

*5, 6-7 (citing Restatement (Second) of Judgments 84 (1982)).

Wolf argues that he reasonably relied on the district

court's retention of "exclusive" (i.e., sole and indefeasible)

5

jurisdiction over the Rule 10b-5 claim and, as a consequence,

that he was victimized by an unfair procedural ambush. Although

we reject Wolf's characterization,2 we hold that the district

court erred in ruling that the federal securities claim was

precluded by the arbitral award on the state-law claims.

II II

DISCUSSION DISCUSSION

A. Standards Of Review A. Standards Of Review

We review a grant of summary judgment de novo, under

the identical legal standards governing the district court, in

order to determine whether "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added); see

Jirau-Bernal v. Agrait, 37 F.3d 1, 3 (1st Cir. 1994). As the

preclusive effect of a prior "judgment" is a question of New York



2The district court did not purport to oust or bar
concurrent arbitral jurisdiction over the Rule 10b-5 claim. See
Wolf, 1994 U.S. Dist. LEXIS 7627, at *5-6. Rather, its ruling
simply recognized that the district court did possess jurisdic-
tion over Wolf's Rule 10b-5 claim.

6

law,3 it too is subject to de novo review. See, e.g., Gonzalez

v. Banco Central Corp., 27 F.3d 751, 755 (1st Cir. 1994). 



3Citing instead to federal decisional law addressing certain
generic res judicata concepts, see, e.g., Pujol v. Shearson/
American Express, Inc., 829 F.2d 1201, 1206-07 (1st Cir. 1987)
(prior arbitral awards may have preclusive effect), the district
court did not consider which jurisdiction's law should guide a
federal court in assessing the preclusive effect of a state-law
based arbitral award which has not been confirmed in a judicial
proceeding. Had Wolf's arbitral award been confirmed by a New
York court, the resulting judgment presumably would be entitled
to the same preclusive effect in federal court as it would be
accorded by a New York court. See 28 U.S.C. 1738 ("full faith
and credit"); see also, e.g., Oliveras v. Miranda Lopo, 800 F.2d
3, 6 (1st Cir. 1986) (citing Migra v. Warren City Sch. Dist. Bd.
of Educ., 465 U.S. 75, 81 (1984)); Restatement (Second) of
Judgments 84(1), 86. As section 1738's "full faith and
credit" provision does not apply to unconfirmed arbitral awards,
however, see McDonald v. City of West Branch, 466 U.S. 284, 287-
88 (1984) (for res judicata purposes, unless an arbitral award
has received judicial confirmation, it is not the product of a
"judicial proceeding" as defined in 28 U.S.C. 1738), it afford-
ed no support for the district court's ruling that Wolf's uncon-
firmed arbitral award was entitled to preclusive effect. Cf.
Wolf, 1994 U.S. Dist. LEXIS 7627, at *4 (citing Pujol, 829 F.2d
1201, 1204 (1st Cir. 1987) (where final arbitral award had been
confirmed by state court)). 
Moreover, since it is now settled law that the contracting
parties may accede (or object) to an arbitral submission of
federal securities claims based on Rule 10b-5, see Shearson/Am.
Express, Inc. v. McMahon, 482 U.S. 220, 227-38 (1987) (Rule 10b-5
claims not presumptively nonarbitrable), we can discern no sound
reason for not according comparable legal effect to the reason-
able expectations of the contracting parties as embodied in the
choice-of-law clause in their Agreement. See Volt Info. Scienc-
es, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,
489 U.S. 468, 478 (1989) (arbitration law "simply requires courts
to enforce privately negotiated agreements to arbitrate, like
other contracts, in accordance with their terms") (emphasis
added); McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir. 1994)
(citing Restatement (Second) of the Conflict of Laws 187 (1971)
(courts should generally respect contractual choice-of-law
provisions)). We therefore defer to the emphatic choice-of-law
provision in the Wolf-Gruntal Agreement, see supra pp. 2-3
(contract "governed by New York law without giving effect to
external law"), which necessarily encompassed New York res
judicata principles. 

7

B. Res Judicata B. Res Judicata

Res judicata is not implicated if the forum which

rendered the prior "judgment" (viz., the arbitral award) lacked

"jurisdiction" over the putatively precluded claim (viz., the

Rule 10b-5 claim). See, e.g., Fiore v. Oakwood Plaza Shopping

Ctr., Inc., 592 N.Y.S.2d 720, 720-21 (App. Div. 1993); Handy v.

Westbury Teachers Ass'n, 480 N.Y.S.2d 728, 731 (App. Div. 1984);

see also Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 34

(1st Cir. 1991); Kale, 924 F.2d at 1167; Pasterczyk v. Fair, 819

F.2d 12, 14 (1st Cir. 1987).

Unlike collateral estoppel (issue preclusion), res

judicata (claim preclusion) normally bars (i) relitigation of

claims actually asserted in a tribunal of competent jurisdiction,

see Restatement (Second) of Judgments 26(1)(c) (1982),4 and

(ii) litigation of claims that arose from the same set of opera-

tive facts and could have been raised in the prior proceeding.

See, e.g., Hodes v. Axelrod, 515 N.E.2d 612, 616 (N.Y. 1987)

(adopting "pragmatic" transaction test for determining which

claims could have been raised in prior proceeding); see also



4Among the circumstances in which claim preclusion does not
obtain are those in which "[t]he plaintiff was unable to rely on
a certain theory of the case or to seek a certain remedy or form
of relief in the first action because of the limitations on the
subject matter jurisdiction of the courts or restrictions on
their authority to entertain multiple theories or demands for
multiple remedies or forms of relief in a single action, and the
plaintiff desires in the second action to rely on that theory or
to seek that remedy or form of relief . . . ." Restatement
(Second) of Judgments 26(1)(c) (emphasis added). 

8

Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).

C. Arbitral Awards C. Arbitral Awards

Final arbitral awards are entitled to the same preclu-

sive effect as state court judgments, at least as concerns claims

and issues actually raised. See Rembrandt Indus., Inc. v. Hodges

Int'l, Inc., 344 N.E.2d 383, 384 (N.Y. 1976); see also Khandhar

v. Elfenbein, 943 F.2d 244, 247 (2d Cir. 1991) (N.Y. law); Katz

v. Financial Clearing & Servs. Corp., 794 F. Supp. 88, 94 (S.D.N-

.Y. 1992) (same); cf. Pujol v. Shearson/American Express, Inc.,

829 F.2d 1201, 1206-07 (1st Cir. 1987); infra note 6 and accompa-

nying text. By the same token, we conclude that New York recog-

nizes the same "jurisdictional" limitation upon the reach of res

judicata coverage with respect to prior arbitral awards as is

generally applied to final judgments, cf. Restatement (Second) of

Judgments 26(1)(c), supra note 4. We explain. 

Because arbitral awards are not "judgments" per se, it

cannot be presumed, as the district court did, that an arbitral

tribunal acquired competent authority over the putative "pre-

cluded" claim for res judicata purposes. Unlike federal courts

of limited jurisdiction and state courts of general jurisdiction,

wherein a litigant, with standing, unilaterally may invoke the

appropriate judicial tribunal's jurisdiction based on extrinsic

constitutional, statutory, or common law authority, see Cine-

Source, Inc. v. Burrows, 581 N.Y.S.2d 9, 10 (App. Div. 1992),

arbitral tribunals' authority over particular "claims" is for the

9

most part predetermined by contract; that is, by written agree-

ment of the parties. Id. (noting, as basis for limiting res

judicata effect of arbitral awards, that "the authority of an

arbitrator to decide a controversy is derived entirely from the

consent of the parties"). 

Arbitral "claims" comprise two subsets for purposes of

the jurisdictional analysis required under the present analogue

to Restatement 26(1)(c). First, where the parties have

contracted to submit all disputes or controversies to

arbitration, either party may compel arbitration simply by

submitting a unilateral "demand for arbitration," relying on the

broad-based agreement to arbitrate as the sole source of arbitral

authority. See, e.g., N.Y. Civ. Prac. L. & R. 7503(c) (1993);

Cohen v. Cohen, 233 N.Y.S.2d 787, 791 (App. Div. 1962) (describ-

ing arbitration proceedings which may be commenced on unilateral

"demand"). Second, even where the contract either includes no

arbitration clause or excludes particular kinds of "claims" from

arbitration, the contracting parties later may agree in writing

to arbitrate any or all such otherwise nonarbitrable claims

("uncovered claims"), simply by entering into a joint arbitral

"submission." Id. As arbitral "jurisdiction" is dependent upon

a written agreement between the parties,5 however, any exercise

of arbitral authority over uncovered claims absent a "meeting


5Although there no longer exists an impenetrable extrinsic
"jurisdictional" obstacle to arbitral authority over Rule 10b-5
claims, see McMahon, 482 U.S. at 227-38, supra note 3, arbitral
authority over such a claim nonetheless depends upon the mutual
consent of the parties.

10

of the minds" duly memorialized in a joint arbitral submission

would constitute an exces de pouvoir. See N.Y. Civ. Prac. L. &

R. 7501 (putative agreements to arbitrate are unenforceable

unless reduced to writing).

D. The Scope of the Arbitration Clause D. The Scope of the Arbitration Clause

The arbitration clause in the Agreement, which provides

that "arbitration shall not be mandated on claims asserting

violation(s) of Federal securities/commodities laws," places

Wolf's Rule 10b-5 claim squarely into the latter category. Cf.

Church v. Gruntal & Co., 698 F. Supp. 465, 468-69 (S.D.N.Y. 1988)

(holding that identical contract language excluded Rule 10b-5

claim from arbitration). As the district court recognized, the

Agreement expressly provided that all non-federal securities

disputes were to be arbitrated but conferred no arbitral authori-

ty over the Rule 10b-5 claim. Nor did the Agreement require Wolf

to initiate an arbitral "submission" encompassing the Rule 10b-5

claim. See Rembrandt Indus., Inc. v. Hodges Int'l, Inc., 359

N.Y.S.2d 807, aff'd, 344 N.E.2d at 384 ("Where, however, [a

'compulsory' counterclaim, arising from the same transaction,]

not passed upon by the arbitrators is the subject of a later

action; obviously the [arbitral] award is not a bar to that

action."); Cine-Source, 581 N.Y.S.2d at 10 (rejecting, in the

context of a broad-based arbitration clause, the contention that

"res judicata applies not only to [claims] which were actually

decided in arbitration but also to those which could have been

asserted . . . ."); Lopez v. Parke Rose Management Sys., Inc.,

11

526 N.Y.S.2d 156, 158 (App. Div. 1988) ("[T]he doctrines of

collateral estoppel and res judicata apply to arbitration awards,

. . . [h]owever, where an issue not passed upon by an arbitrator

is the subject of a subsequent action, the award is not a bar to

that action . . . ."); Conforti & Eisele, Inc. v. William J.

Scully, Inc., 469 N.Y.S.2d 400, 400-01 (App. Div. 1983) (holding

no res judicata effect to "limited" arbitral submission, even

where plaintiff presented, then withdrew, the same "claims" from

the first arbitrator during arbitration).6

As the proponent of the res judicata defense, Gruntal

was charged with the burden of proving, see Rembrandt, 344 N.E.2d

at 384 (claim and issue preclusion); see also Kaufman v. Eli

Lilly & Co., 482 N.E.2d 63, 67 (N.Y. 1985) (same, collateral

estoppel); Clark v. Scoville, 91 N.E. 800, 802 (N.Y. 1910)

(same); cf. also Blonder-Tongue Lab., Inc. v. University of Ill.

Found., 402 U.S. 313, 350 (1971); Clark v. Bear Stearns & Co.,

966 F.2d 1318, 1321 (9th Cir. 1992), at a bare minimum, cf. supra

note 6, that the arbitral forum possessed jurisdiction over the

Rule 10b-5 claim at the time Wolf demanded arbitration on the

state-law claims. Notwithstanding the prediction indulged by the



6Indeed, as indicated in the accompanying text, the cir-
cumstances in these New York cases suggest a far narrower appli-
cation of res judicata principles in the context of arbitral
awards than need be deployed here. Thus, even in circumstances
where either party could have submitted a particular claim or
issue to compelled arbitration pursuant to a broad-based, written
arbitration clause conferring "jurisdiction" upon an arbitral
forum, the governing preclusion principles under New York law
would bar only claims or issues actually submitted to arbitra-
tion.

12

district court that Gruntal would have been amenable to

arbitration in March 1993 the Rule 10b-5 claim was mutually

withheld from arbitration under the express terms of the

Agreement, and no joint arbitral submission was ever attempted or

memorialized between Wolf and Gruntal.

Under New York law, see, e.g., Cine-Source, 581 N.Y.S.

2d at 10, absent a bilateral, written submission, an arbitral

forum (unlike a judicial forum exercising its presumptive juris-

diction) could not acquire "jurisdiction" over Wolf's Rule 10b-5

claim. Consequently, the arbitral award could not preclude later

litigation of the Rule 10b-5 claim in federal district court.

See, e.g., Clark, 966 F.2d at 1321 ("[P]ursuant to the terms of

Bear Stearns' [contractual] agreement with Clark . . . the

arbitration panel did not have subject matter jurisdiction over

Clark's federal claims, [and] Clark could not have brought them

in the prior [arbitration] proceeding.").7 Of course, had


7The district court apparently misapprehended the thrust of
the Clark case citation to Dean Witter Reynolds, Inc. v. Byrd,
470 U.S. 213, 220 n.6 (1985), for the overbroad proposition that
enforcement of an arbitration agreement "ousts" a court from
jurisdiction over the entire dispute. See Wolf, 1994 U.S. Dist.
LEXIS 7627, at *7 (citing Clark, 966 F.2d at 1321). Viewed in
context, the Clark citation to Byrd merely emphasized that the
Federal Arbitration Act had been enacted to "ensure judicial
enforcement of privately made agreements to arbitrate" even if
that "require[ed] piecemeal resolution when necessary to give
effect to an arbitration agreement." Byrd, 470 U.S. at 220-21
(quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,
460 U.S. 1, 24-25 (1983)) (emphasis added). Thus, in Clark, as
here, the district court retained exclusive jurisdiction over the
Rule 10b-5 claim absent a written, bilateral agreement to the
contrary.
Gruntal cites Kelly v. Merrill Lynch, Pierce, Fenner &
Smith, 985 F.2d 1067, 1069-70 (11th Cir.), cert. denied, 114 S.
Ct 600 (1993), to no avail. There, the "precluding" judgment had

13

Gruntal wished to impress the ensuing arbitral award with preclu-

sive effect vis-a-vis the Rule 10b-5 claim, it could have endeav-

ored to persuade Wolf to join an arbitral submission. See Ticker

v. Trager, 482 N.Y.S.2d 535, 536 (App. Div. 1984) ("No one is

under a duty to resort to arbitration unless by clear language he

has so agreed.") (quoting Lehman v. Ostrovsky, 264 N.Y. 130, 132

(1934)).

III III

CONCLUSION CONCLUSION

Although Wolf incorrectly represents that the district

court ousted or impeded arbitral jurisdiction over the Rule 10b-5

claim, see supra note 2, the district court nonetheless retained

exclusive jurisdiction over the Rule 10b-5 claim absent an

enforceable arbitral submission encompassing the Rule 10b-5

claim. Consequently, Gruntal was not entitled to judgment as a

matter of law, see Jirau-Bernal, 37 F.3d at 3, and the district

court judgment dismissing the Rule 10b-5 claim on claim preclu-

sion grounds must be vacated.



been rendered by a federal district court presumptively vested
with "federal question" jurisdiction over the plaintiff's uncov-
ered Rule 10(b)(5) claim, as well as with pendent jurisdiction
over his four state-law claims. As the defendant's consent was
not necessary to enable plaintiff Kelly to assert his state-law
claims in the federal district court action, res judicata did
indeed preclude later arbitration of the pendent state-law
claims. Id.

14

The district court judgment is vacated. The case is The district court judgment is vacated. The case is

remanded for further proceedings consistent with this opinion. remanded for further proceedings consistent with this opinion.

Costs to appellant. Costs to appellant.

15