USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1147 HAYDEE JIRAU-BERNAL, Plaintiff, Appellant, v. FERNANDO AGRAIT, ETC., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, Senior U.S. District Judge] __________________________ ____________________ Cyr and Stahl, Circuit Judges, ______________ and Zobel,* U.S. District Judge. ___________________ ____________________ Jesus Hernandez Sanchez, with whom Hernandez Sanchez Law Firm was _______________________ __________________________ on brief for appellant. James D. Noel III, with whom Ledesma, Palou & Miranda was on ___________________ _________________________ brief for appellees. ____________________ September 28, 1994 ____________________ ____________________ *Of the District of Massachusetts, sitting by designation. CYR, Circuit Judge. Plaintiff Haydee Jirau Bernal CYR, Circuit Judge. _____________ (Jirau) appeals from a district court judgment disallowing her political discrimination claims against the University of Puerto Rico (UPR) and UPR officials Fernando Agrait, Jose Luis Martinez Pico, Jesse Roman Toro, and Saul Hernandez Gaya, for allegedly effecting her constructive discharge from a tenured UPR position in violation of the First, Fifth and Fourteenth Amendments to the United States Constitution. See 42 U.S.C. 1983 (1993). We ___ vacate the judgment, and remand for further proceedings. I I BACKGROUND BACKGROUND __________ Jirau, a known member of the New Progressive Party (NPP), worked for the UPR Agricultural Extension Service/Mayaguez for thirty years. In 1982 she was appointed Assistant Director of the UPR Home Economics and Nutrition Program, a position which carried a higher salary and required her to supervise more than 200 UPR employees. Following the 1984 general elections, which swept the Popular Democratic Party (PDP) into office throughout Puerto Rico, defendant Fernando Agrait was appointed UPR presi- dent, the first of several key UPR posts to be filled by promi- nent PDP members. In August 1986 the UPR administration informed Jirau that her position as Assistant Director was to be abolished in an overall reorganization of the "inefficient" Agricultural Extension Service, and that henceforth Jirau would serve as a Specialist in Consumer Education, which neither entailed supervi- 2 sory responsibility nor entitled her to the prerogatives (e.g., ____ secretary, direct phone line) and salary associated with her former position. Shortly after UPR formally abolished the position held by Jirau, Ms. Colon Hernandez, a known PDP member, was appointed to a newly-named position incorporating the identi- cal job functions. As part and parcel of the reorganization, UPR "demoted" five other employees, all NPP affiliates, and replaced them with PDP members. Contemporaneously, during a conversation with one of the five demotees, defendant Hernandez Gaya stated that the new PDP administration "had to select its own team, loyal to the ideology of the party in power." As Jirau consid- ered her "demotion" intolerable, she accepted early retirement in August 1986. Jirau, and others similarly situated, sued UPR and the four individual administrators, alleging that the "demotions" were politically motivated in violation of their First Amendment rights, and had been effected without a pre-demotion hearing in violation of their procedural due process rights under the Fifth and Fourteenth Amendments. The plaintiffs sought declaratory and equitable (reinstatement) relief as well as compensatory and punitive damages. After settling with the other plaintiffs, defendants moved for summary judgment on both Jirau claims. The district court ultimately adopted the report and recommendation of a magistrate judge, concluding that Jirau had neither generat- ed a trialworthy issue as to whether defendants harbored a dis- criminatory animus, nor rebutted the nondiscriminatory motivation 3 alleged by defendants. Summary judgment entered for defendants, and Jirau appealed. II II DISCUSSION DISCUSSION __________ A. First Amendment Claim: Politically Discriminatory Demotion A. First Amendment Claim: Politically Discriminatory Demotion __________________________________________________________ 1. Evidence of Discriminatory Animus 1. Evidence of Discriminatory Animus _________________________________ Jirau contends that the summary judgment must be set aside because the district court ignored or discounted evidence sufficient to generate a trialworthy issue as to whether the defendants harbored a discriminatory animus. We review the grant of summary judgment de novo, under the same standards incumbent __ ____ on the district court, to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Velez-Gomez v. SMA Life Assurance Co., 8 F.3d 873, 874-75 ___________ ______________________ (1st Cir. 1993). We view the record evidence, and draw all fair inferences, in the light most favorable to the nonmoving party. Id. ___ A plaintiff asserting a political discrimination claim under the First Amendment bears the preliminary burden of produc- ing competent direct or circumstantial evidence that political affiliation played a "substantial" role in the adverse employment decision. Ferrer v. Zayas, 914 F.2d 309, 311 (1st Cir. 1990). ______ _____ See Anthony v. Sundlun, 952 F.2d 603, 605 (1st Cir. 1991). The ___ _______ _______ 4 district court aptly observed that mere evidence that Jirau had been "demoted" by reassignment to a nonsupervisory position at reduced salary was insufficient evidence of discriminatory animus, because it is entirely consistent with defendants' "reorganization" defense. However, Jirau proffered other cir- cumstantial evidence probative of possible discriminatory motiva- tion: (1) all defendants were known PDP members, while Jirau and all her fellow demotees were members of the opposition NPP, see, ___ e.g., Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993); ____ ____________ ______ Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 40 (1st Cir. _______________ ______________ 1993); Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 264 (1st ________________ ____________ Cir. 1987), cert. denied, 486 U.S. 1044 (1988); and (2) plain- _____ ______ tiffs' previous positions, though formally abolished, were promptly reconstituted under different titles and filled by known PDP members, see, e.g., Rodriguez-Pinto, 982 F.2d at 40. Most ___ ____ _______________ importantly, however, Jirau proffered direct evidence of a dis- ______ criminatory motivation: the affidavit attesting to defendant Hernandez Gaya's statement that the UPR administration "had to select its own team, loyal to the ideology of the party in power." E.g., Acevedo-Diaz, 1 F.3d at 69-70 n.6 (defendant ____ ____________ allegedly told plaintiff that she was "not a person of trust"); Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 706 (1st Cir. ________________ ______________ 1993) (defendants told plaintiff "outright" she would be demoted because of her NPP affiliation); Aviles-Martinez v. Monroig, 963 _______________ _______ F.2d 2, 6-7 (1st Cir. 1992) (defendant asked plaintiff whether he had met with NPP members). Assuming its truth, as we must on 5 summary judgment, see Velez-Gomez, 8 F.3d at 877, this affidavit ___ ___________ satisfied the threshold burden of proof incumbent on Jirau for present purposes. The magistrate-judge's reliance on Jirau's failure to rebut the reorganization defense was flawed. First Amendment political discrimination claims are not subject to the Title VII burden-shifting device. Whereas a Title VII claimant retains the burden of proof throughout, even after the burden of limited production has shifted to the Title VII defendant to assert a __________ nondiscriminatory motivation for the challenged action, in the First Amendment context Jirau successfully foisted the burden of proof onto these defendants simply by meeting her own threshold _____ burden of persuasion. See Acevedo-Diaz, 1 F.3d at 66-67 (con- ___ ____________ trasting Burdine and Mt. Healthy "burden shifting"). Defendants _______ ____________ were required to establish the absence of a trialworthy dispute as to whether "efficiency" was their only motivation for the Jirau demotion. Summary judgment would have been warranted, in other words, only if defendants' evidentiary proffer compelled _________ the finding that political discrimination did not constitute a "but for" cause for the demotion. See id. at 68. Since the ___ ___ affidavit directly evidenced a discriminatory animus at odds with their reorganization defense, and required credibility determina- tions appropriate to the trier of fact, defendants were not entitled to summary judgment. Secondly, though Jirau was not required to meet the ________ reorganization defense in order to avert summary judgment, she 6 did so. Notwithstanding defendants' proffer that the Agricultur- al Extension Service and its directors had proven "inefficient," Jirau countered with several affidavits from former UPR officials attesting to her efficiency, as well as the efficiency of her co- workers and department. See id. at 71 (evidence that plaintiff ___ ___ efficiently performed job may rebut reorganization defense) (citing cases). Thus, Jirau's "rebuttal" evidence likewise generated a credibility dispute critical to the reorganization defense and appropriate for resolution by the trier of fact. 2. Evidence of "Constructive Discharge" 2. Evidence of "Constructive Discharge" ___________________________________ The defendants nonetheless urge affirmance on the ground that Jirau did not proffer sufficient evidence that her reassignment was so onerous or intolerable as to be actionable as a "constructive discharge." See Levy v. FDIC, 7 F.3d 1054, 1056 ___ ____ ____ (1st Cir. 1993) (appellate court may affirm on any adequate ground, whether or not raised or addressed below). We reject their contention.1 Defendants contend that Jirau should be strictly confined to establishing a "constructive discharge," a term she has used continually throughout the litigation. Were we to hold ____________________ 1The magistrate-judge's report notes that Jirau's reassign- ment to a nonsupervisory position at reduced salary was "not sufficient for a prima facie showing of constructive discharge." The context nevertheless belies any interpretation that the magistrate judge purportedly assessed the adversity occasioned by _________ the challenged employment action. The quoted statement culmi- nates a lengthy discussion on the distinct "political animus" element of the 1983 claim, see supra Section II.A.1, which ___ _____ cites no authority pertinent to the "adversity" matter. Thus, the district court did not reach the "adverse employment deci- sion" issue. 7 Jirau to the rigid nomenclature advocated by defendants, she would have to demonstrate the heightened constitutional "injury" which victims of patronage discrimination were required to establish before our decision in Agosto-de-Feliciano v. Aponte- ______ ___________________ _______ Roque, 889 F.2d 1209 (1st Cir. 1989) (patronage claims may be _____ actionable for employment decisions short of "discharge"), and the Supreme Court's decision in Rutan v. Republican Party of _____ ____________________ Illinois, 497 U.S. 62 (1990) (patronage claims may extend to ________ hiring, promotions, transfers, and recalls).2 From the outset, however, Jirau simultaneously characterized the challenged 1986 employment decision as a "demotion," an adverse employment action implicating both the Agosto and Rutan paradigms, and included a ______ _____ ___ copy of Rutan in her opposition to defendants' motion for summary _____ judgment. The defendants therefore cannot contend that they or the magistrate judge were not fairly alerted to the intendment of the terms "constructive discharge" and "demotion." Moreover, we have been particularly loathe to hold First Amendment political discrimination claims forfeit on such insubstantial bases. See ___ Balaguer-Santiago v. Torres-Gaztambide, 932 F.2d 1015, 1016 (1st _________________ _________________ Cir. 1991). Finally, the evidence that Jirau was transferred from a position with supervisory responsibility for more than 200 employees, to a nonsupervisory position carrying a lower salary, surely generated a trialworthy issue as to whether defendants' ____________________ 2Since the individual defendants have not asserted qualified __________ immunity, see Aviles-Martinez, 963 F.2d at 6 (pre-Agosto employ- ___ _______________ ______ ment actions generally must rise to the level of "discharge" to avert qualified immunity), we do not consider it. 8 adverse employment decision constituted an actionable demotion under either Agosto or Rutan. See Nereida-Gonzalez, 990 F.2d at ______ _____ ___ ________________ 702-03, 706 (holding that similar demotion to nonsupervisory, lower-paying position generated triable issue); Rivera-Ruiz v. ___________ Gonzalez-Rivera, 983 F.2d 332, 334, 335 (1st Cir. 1993) (same). _______________ B. Fifth Amendment Claim: Denial of Pre-demotion Hearing B. Fifth Amendment Claim: Denial of Pre-demotion Hearing ______________________________________________________ Lastly, Jirau insists that her procedural due process claim was improperly disallowed notwithstanding competent evi- dence that she was denied a pre-demotion hearing and that her assistant directorship constituted a cognizable property interest under Puerto Rico law. See Cleveland Bd. of Educ. v. Loudermill, ___ ______________________ __________ 470 U.S. 532, 538 (1985). We agree. The magistrate-judge's report and recommendation apparently assumed, incorrectly, that what was perceived as a failure on Jirau's part to adduce sufficient evidence of dis- criminatory animus would warrant dismissal of her due process claim as well. Jirau would be entitled to a pre-demotion hearing were she to establish that she held a "property right" to her assistant directorship position, see Cotnoir v. University of ___ _______ ______________ Maine Systs., ___ F.3d ___, ___ (1st Cir. 1994) [No. 94-1113, ____________ slip op. at 9 (1st Cir. Sept. 13, 1994)], an issue not reached by the district court. We therefore vacate the summary judgment and remand for further proceedings on the due process claim as well. See Nereida-Gonzalez, 990 F.2d at 706-07. ___ ________________ The district court judgment is vacated and the case is The district court judgment is vacated and the case is _______________________________________________________ remanded for further proceedings consistent with this opinion. remanded for further proceedings consistent with this opinion. _____________________________________________________________ 9