USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-1658 KENNETH P. WOLF, Plaintiff, Appellant, v. GRUNTAL & CO., INC., Defendant, Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________  ____________________ Before Cyr and Stahl, Circuit Judges, ______________ and DiClerico,* District Judge. ______________  ____________________ George S. Isaacson, with whom Brann & Isaacson and Peter D. Lowe __________________ ________________ _____________ were on brief for appellant. Joseph P. Moodhe, with whom Debevoise & Plimpton, Ariadne D. _________________ _____________________ __________ Makris, John P. McVeigh, Preti, Flaherty, Beliveau & Pachios and ______ _________________ ______________________________________ Lionel G. Hest were on brief for appellee. ______________  ____________________ January 25, 1995  ____________________  ____________________ *Chief Judge of the District of New Hampshire, sitting by designation. CYR, Circuit Judge. Plaintiff Kenneth P. Wolf appeals CYR, Circuit Judge.  _____________ a summary judgment order dismissing his Rule 10b-5 claim against defendant-appellee Gruntal & Co. ("Gruntal"), a securities brokerage firm, for fraudulently mismanaging Wolf's investment accounts in violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. 78j(b). As the district court erred in ruling that Wolf's claim was precluded by an earlier arbitral award, we vacate the judgment and remand for further proceedings. I I BACKGROUND BACKGROUND __________ Viewed in the light most favorable to appellant Wolf, see Velez-Gomez v. SMA Life Assurance Co., 8 F.3d 873, 874-75 ___ ___________ _______________________ (1st Cir. 1993), the summary judgment record discloses the following facts. In March 1988, Wolf opened cash and margin accounts with Gruntal at its branch office in Portland, Maine. Wolf signed a Customer Agreement ("Agreement") which contained an arbitration clause: "[a]ny controversy between [Gruntal] and [Wolf] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration. . . . Notwithstanding _______________ the foregoing, arbitration shall not be mandated on claims ___ _________ ___________ _____ ___ __ ________ __ ______ asserting violation(s) of Federal securities/commodities laws." _________ ____________ __ _______ ______________________ ____ Agreement 16 (emphasis added). Paragraph 17 further provided that "th[e] agreement and its enforcement would be governed by 2 New York law without giving effect to external law." Id. 17. ___ Thereafter, between 1988 and 1990, a Gruntal agent fraudulently mismanaged Wolf's accounts, causing a loss approximating $1 million. In December 1991, Wolf initiated the present action against Gruntal in the United States District Court for the District of Maine. The complaint asserted seven state-law claims, as well as one federal claim under the Securities and Exchange Act of 1934, 15 U.S.C. 78j(b); Rule 10b-5, 17 C.F.R. 3 240 (1993).1 Gruntal moved to stay the district court proceed- ings pending arbitration on all eight claims. The district court ruled that the arbitration clause in the Agreement unambiguously permitted Wolf to forego arbitration _________ and to litigate the Rule 10b-5 claim in district court, but that the seven state-law claims were arbitrable. Since no party had sought to compel arbitration, however, the district court refused  ____________________ 1Rule 10b-5, promulgated pursuant to section 78(j)(b), provides in pertinent part: It shall be unlawful for any person, directly or in- directly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any nation- al securities exchange, (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circum- stances under which they were made, not misleading, or (c) to engage in any act, practice, or course of busi- ness which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any securi- ty. 17 C.F.R. 240 (1993). The Rule 10b-5 claim alleged that Gruntal's fraudulent scheme was comprised of three basic components: (1) Gruntal misrepresented that its investments would comport with Wolf's low-risk investment objectives; (2) Gruntal fraudulently extended the one-month term of Wolf's margin account, without Wolf's knowledge or consent, in order to promote Gruntal's interests (i.e., by using Wolf's credit to manipulate the price of stock ____ (Secor/Novametrix) in waging its own "trading war"); and (3) Gruntal repeatedly concealed the unauthorized margin account activity by using Wolf's investment and "safekeeping" assets (e.g., treasury bills) as collateral for his burgeoning margin ____ account indebtedness to Gruntal. 4 to stay its proceedings on the Rule 10b-5 claim pending arbitra- tion and the parties proceeded with discovery. In March 1993, Wolf submitted a unilateral demand for arbitration on the seven state-law claims; in December 1993, he recovered a $200,000 arbitral award against Gruntal. Gruntal thereafter moved for summary judgment in the district court, contending that the final arbitral award on the state-law claims precluded the Rule 10b-5 claim under the doctrine of res judica- ___ _______ ta.  __ The district court granted summary judgment. Wolf v. ____ Gruntal & Co., No. 91-426-P-H, 1994 U.S. Dist. LEXIS 7627 (D. Me. _____________ May 24, 1994). It correctly concluded that the Rule 10b-5 claim and the seven state-law claims arose out of the same "operative nucleus of fact" (i.e., the ongoing account mismanagement by ____ Gruntal). Id. at *4 (citing Kale v. Combined Ins. Co. of Am., ___ ____ _________________________ 924 F.2d 1161, 1166 (1st Cir.), cert. denied, 112 S. Ct. 69 _____ ______ (1991)). As "Gruntal [had] made clear that it would accept arbitration of the [Rule 10b-5] claim," the district court envisioned no "jurisdictional obstacle" in the event Wolf had elected to submit the Rule 10b-5 claim to arbitration. Conse- quently, the court reasoned, the final arbitral award on the state-law claims precluded the Rule 10b-5 claim because Wolf "could have" presented the federal claim to arbitration. Id. at ___ *5, 6-7 (citing Restatement (Second) of Judgments 84 (1982)). _________________________________ Wolf argues that he reasonably relied on the district court's retention of "exclusive" (i.e., sole and indefeasible) ____ 5 jurisdiction over the Rule 10b-5 claim and, as a consequence, that he was victimized by an unfair procedural ambush. Although we reject Wolf's characterization,2 we hold that the district court erred in ruling that the federal securities claim was precluded by the arbitral award on the state-law claims. II II DISCUSSION DISCUSSION __________ A. Standards Of Review A. Standards Of Review ___________________ We review a grant of summary judgment de novo, under __ ____ the identical legal standards governing the district court, in order to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment ___ ______ _____ __ ________ __ ________ as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added); see __ _ ______ __ ___ ___ Jirau-Bernal v. Agrait, 37 F.3d 1, 3 (1st Cir. 1994). As the ____________ ______ preclusive effect of a prior "judgment" is a question of New York  ____________________ 2The district court did not purport to oust or bar concurrent arbitral jurisdiction over the Rule 10b-5 claim. See __________ ___ Wolf, 1994 U.S. Dist. LEXIS 7627, at *5-6. Rather, its ruling ____ simply recognized that the district court did possess jurisdic- tion over Wolf's Rule 10b-5 claim. 6 law,3 it too is subject to de novo review. See, e.g., Gonzalez __ ____ ___ ____ ________ v. Banco Central Corp., 27 F.3d 751, 755 (1st Cir. 1994).  ___________________  ____________________ 3Citing instead to federal decisional law addressing certain generic res judicata concepts, see, e.g., Pujol v. Shearson/ _______ ___ ________ ___ ____ _____ _________ American Express, Inc., 829 F.2d 1201, 1206-07 (1st Cir. 1987) _______________________ (prior arbitral awards may have preclusive effect), the district court did not consider which jurisdiction's law should guide a _____ ______________ federal court in assessing the preclusive effect of a state-law based arbitral award which has not been confirmed in a judicial _________ proceeding. Had Wolf's arbitral award been confirmed by a New York court, the resulting judgment presumably would be entitled ________ to the same preclusive effect in federal court as it would be accorded by a New York court. See 28 U.S.C. 1738 ("full faith ___ and credit"); see also, e.g., Oliveras v. Miranda Lopo, 800 F.2d ___ ____ ____ ________ ____________ 3, 6 (1st Cir. 1986) (citing Migra v. Warren City Sch. Dist. Bd. _____ __________________________ of Educ., 465 U.S. 75, 81 (1984)); Restatement (Second) of ________ _________________________ Judgments 84(1), 86. As section 1738's "full faith and _________ credit" provision does not apply to unconfirmed arbitral awards, ___ however, see McDonald v. City of West Branch, 466 U.S. 284, 287- ___ ________ ___________________ 88 (1984) (for res judicata purposes, unless an arbitral award ___ ________ has received judicial confirmation, it is not the product of a "judicial proceeding" as defined in 28 U.S.C. 1738), it afford- ed no support for the district court's ruling that Wolf's uncon- firmed arbitral award was entitled to preclusive effect. Cf. ___ Wolf, 1994 U.S. Dist. LEXIS 7627, at *4 (citing Pujol, 829 F.2d ____ _____ 1201, 1204 (1st Cir. 1987) (where final arbitral award had been confirmed by state court)).  _________ Moreover, since it is now settled law that the contracting parties may accede (or object) to an arbitral submission of federal securities claims based on Rule 10b-5, see Shearson/Am. ___ ____________ Express, Inc. v. McMahon, 482 U.S. 220, 227-38 (1987) (Rule 10b-5 _____________ _______ claims not presumptively nonarbitrable), we can discern no sound reason for not according comparable legal effect to the reason- able expectations of the contracting parties as embodied in the choice-of-law clause in their Agreement. See Volt Info. Scienc- ___ __________________ es, Inc. v. Board of Trustees of Leland Stanford Junior Univ., ________ ___________________________________________________ 489 U.S. 468, 478 (1989) (arbitration law "simply requires courts to enforce privately negotiated agreements to arbitrate, like ____ other contracts, in accordance with their terms") (emphasis _____ _________ added); McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir. 1994) ________ _____ (citing Restatement (Second) of the Conflict of Laws 187 (1971) ____________________________________________ (courts should generally respect contractual choice-of-law provisions)). We therefore defer to the emphatic choice-of-law provision in the Wolf-Gruntal Agreement, see supra pp. 2-3 ___ _____ (contract "governed by New York law without giving effect to external law"), which necessarily encompassed New York res ___ judicata principles.  ________ 7 B. Res Judicata B. Res Judicata ____________ Res judicata is not implicated if the forum which ___ ________ rendered the prior "judgment" (viz., the arbitral award) lacked ___ "jurisdiction" over the putatively precluded claim (viz., the ___ Rule 10b-5 claim). See, e.g., Fiore v. Oakwood Plaza Shopping ___ ____ _____ _______________________ Ctr., Inc., 592 N.Y.S.2d 720, 720-21 (App. Div. 1993); Handy v. __________ _____ Westbury Teachers Ass'n, 480 N.Y.S.2d 728, 731 (App. Div. 1984); ________________________ see also Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 34 ___ ____ ___________________ _______________ (1st Cir. 1991); Kale, 924 F.2d at 1167; Pasterczyk v. Fair, 819 ____ __________ ____ F.2d 12, 14 (1st Cir. 1987). Unlike collateral estoppel (issue preclusion), res ___ judicata (claim preclusion) normally bars (i) relitigation of ________ claims actually asserted in a tribunal of competent jurisdiction, see Restatement (Second) of Judgments 26(1)(c) (1982),4 and ___ ___________________________________ (ii) litigation of claims that arose from the same set of opera- tive facts and could have been raised in the prior proceeding. _____ ____ ____ ______ See, e.g., Hodes v. Axelrod, 515 N.E.2d 612, 616 (N.Y. 1987) ___ ____ _____ _______ (adopting "pragmatic" transaction test for determining which claims could have been raised in prior proceeding); see also ___ ____  ____________________ 4Among the circumstances in which claim preclusion does not obtain are those in which "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the _______ __ ___ ___________ __ ___ subject matter jurisdiction of the courts or restrictions on _______ ______ ____________ __ ___ ______ __ ____________ __ their authority to entertain multiple theories or demands for _____ _________ __ _________ ________ ________ multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief . . . ." Restatement ___________ (Second) of Judgments 26(1)(c) (emphasis added).  ________ __ _________ 8 Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). ____________________________ ______ C. Arbitral Awards C. Arbitral Awards _______________ Final arbitral awards are entitled to the same preclu- sive effect as state court judgments, at least as concerns claims and issues actually raised. See Rembrandt Indus., Inc. v. Hodges ___ ______________________ ______ Int'l, Inc., 344 N.E.2d 383, 384 (N.Y. 1976); see also Khandhar ___________ ___ ____ ________ v. Elfenbein, 943 F.2d 244, 247 (2d Cir. 1991) (N.Y. law); Katz _________ ____ v. Financial Clearing & Servs. Corp., 794 F. Supp. 88, 94 (S.D.N- _________________________________ .Y. 1992) (same); cf. Pujol v. Shearson/American Express, Inc., ___ _____ ________________________________ 829 F.2d 1201, 1206-07 (1st Cir. 1987); infra note 6 and accompa- _____ nying text. By the same token, we conclude that New York recog- nizes the same "jurisdictional" limitation upon the reach of res ___ judicata coverage with respect to prior arbitral awards as is ________ generally applied to final judgments, cf. Restatement (Second) of ___ _______________________ Judgments 26(1)(c), supra note 4. We explain.  _________ _____ Because arbitral awards are not "judgments" per se, it ___ __ cannot be presumed, as the district court did, that an arbitral tribunal acquired competent authority over the putative "pre- cluded" claim for res judicata purposes. Unlike federal courts ___ ________ of limited jurisdiction and state courts of general jurisdiction, wherein a litigant, with standing, unilaterally may invoke the ____________ appropriate judicial tribunal's jurisdiction based on extrinsic constitutional, statutory, or common law authority, see Cine- ___ _____ Source, Inc. v. Burrows, 581 N.Y.S.2d 9, 10 (App. Div. 1992), ____________ _______ arbitral tribunals' authority over particular "claims" is for the 9 most part predetermined by contract; that is, by written agree- _____________ __ ________ _______ ______ ment of the parties. Id. (noting, as basis for limiting res ____ __ ___ _______ ___ ___ judicata effect of arbitral awards, that "the authority of an ________ arbitrator to decide a controversy is derived entirely from the consent of the parties").  _______ Arbitral "claims" comprise two subsets for purposes of the jurisdictional analysis required under the present analogue to Restatement 26(1)(c). First, where the parties have contracted to submit all disputes or controversies to ___ arbitration, either party may compel arbitration simply by ______ submitting a unilateral "demand for arbitration," relying on the __________ broad-based agreement to arbitrate as the sole source of arbitral ______ authority. See, e.g., N.Y. Civ. Prac. L. & R. 7503(c) (1993); ___ ____ Cohen v. Cohen, 233 N.Y.S.2d 787, 791 (App. Div. 1962) (describ- _____ _____ ing arbitration proceedings which may be commenced on unilateral "demand"). Second, even where the contract either includes no arbitration clause or excludes particular kinds of "claims" from arbitration, the contracting parties later may agree in writing to arbitrate any or all such otherwise nonarbitrable claims ("uncovered claims"), simply by entering into a joint arbitral "submission." Id. As arbitral "jurisdiction" is dependent upon ___ a written agreement between the parties,5 however, any exercise of arbitral authority over uncovered claims absent a "meeting  ____________________ 5Although there no longer exists an impenetrable extrinsic "jurisdictional" obstacle to arbitral authority over Rule 10b-5 claims, see McMahon, 482 U.S. at 227-38, supra note 3, arbitral ___ _______ _____ authority over such a claim nonetheless depends upon the mutual consent of the parties. 10 of the minds" duly memorialized in a joint arbitral submission would constitute an exces de pouvoir. See N.Y. Civ. Prac. L. & _____ __ _______ ___ R. 7501 (putative agreements to arbitrate are unenforceable _____________ unless reduced to writing). D. The Scope of the Arbitration Clause D. The Scope of the Arbitration Clause ___________________________________ The arbitration clause in the Agreement, which provides that "arbitration shall not be mandated on claims asserting violation(s) of Federal securities/commodities laws," places Wolf's Rule 10b-5 claim squarely into the latter category. Cf. ___ Church v. Gruntal & Co., 698 F. Supp. 465, 468-69 (S.D.N.Y. 1988) ______ _____________ (holding that identical contract language excluded Rule 10b-5 _________ claim from arbitration). As the district court recognized, the Agreement expressly provided that all non-federal securities ___________ disputes were to be arbitrated but conferred no arbitral authori- ty over the Rule 10b-5 claim. Nor did the Agreement require Wolf _______ to initiate an arbitral "submission" encompassing the Rule 10b-5 claim. See Rembrandt Indus., Inc. v. Hodges Int'l, Inc., 359 ___ _______________________ ___________________ N.Y.S.2d 807, aff'd, 344 N.E.2d at 384 ("Where, however, [a _____ 'compulsory' counterclaim, arising from the same transaction,] not passed upon by the arbitrators is the subject of a later action; obviously the [arbitral] award is not a bar to that action."); Cine-Source, 581 N.Y.S.2d at 10 (rejecting, in the ___________ context of a broad-based arbitration clause, the contention that "res judicata applies not only to [claims] which were actually decided in arbitration but also to those which could have been _____ ____ ____ asserted . . . ."); Lopez v. Parke Rose Management Sys., Inc., ________ _____ _________________________________ 11 526 N.Y.S.2d 156, 158 (App. Div. 1988) ("[T]he doctrines of collateral estoppel and res judicata apply to arbitration awards, . . . [h]owever, where an issue not passed upon by an arbitrator is the subject of a subsequent action, the award is not a bar to that action . . . ."); Conforti & Eisele, Inc. v. William J. ________________________ __________ Scully, Inc., 469 N.Y.S.2d 400, 400-01 (App. Div. 1983) (holding ____________ no res judicata effect to "limited" arbitral submission, even ___ ________ where plaintiff presented, then withdrew, the same "claims" from _________ ________ the first arbitrator during arbitration).6 As the proponent of the res judicata defense, Gruntal ___ ________ was charged with the burden of proving, see Rembrandt, 344 N.E.2d ___ _________ at 384 (claim and issue preclusion); see also Kaufman v. Eli ___ ____ _______ ___ Lilly & Co., 482 N.E.2d 63, 67 (N.Y. 1985) (same, collateral ____________ estoppel); Clark v. Scoville, 91 N.E. 800, 802 (N.Y. 1910) _____ ________ (same); cf. also Blonder-Tongue Lab., Inc. v. University of Ill. ___ ____ _________________________ __________________ Found., 402 U.S. 313, 350 (1971); Clark v. Bear Stearns & Co., ______ _____ ___________________ 966 F.2d 1318, 1321 (9th Cir. 1992), at a bare minimum, cf. supra _______ ___ _____ note 6, that the arbitral forum possessed jurisdiction over the Rule 10b-5 claim at the time Wolf demanded arbitration on the __ ___ ____ ____ ________ ___________ __ ___ state-law claims. Notwithstanding the prediction indulged by the _________ ______  ____________________ 6Indeed, as indicated in the accompanying text, the cir- cumstances in these New York cases suggest a far narrower appli- cation of res judicata principles in the context of arbitral ___ ________ awards than need be deployed here. Thus, even in circumstances where either party could have submitted a particular claim or ______ issue to compelled arbitration pursuant to a broad-based, written arbitration clause conferring "jurisdiction" upon an arbitral forum, the governing preclusion principles under New York law would bar only claims or issues actually submitted to arbitra- ________ _________ tion. 12 district court that Gruntal would have been amenable to arbitration in March 1993 the Rule 10b-5 claim was mutually ________ withheld from arbitration under the express terms of the ________ Agreement, and no joint arbitral submission was ever attempted or memorialized between Wolf and Gruntal. Under New York law, see, e.g., Cine-Source, 581 N.Y.S. ___ ____ ___________ 2d at 10, absent a bilateral, written submission, an arbitral _________ _______ forum (unlike a judicial forum exercising its presumptive juris- ___________ diction) could not acquire "jurisdiction" over Wolf's Rule 10b-5 claim. Consequently, the arbitral award could not preclude later _____ ___ litigation of the Rule 10b-5 claim in federal district court. See, e.g., Clark, 966 F.2d at 1321 ("[P]ursuant to the terms of ___ ____ _____ Bear Stearns' [contractual] agreement with Clark . . . the arbitration panel did not have subject matter jurisdiction over Clark's federal claims, [and] Clark could not have brought them in the prior [arbitration] proceeding.").7 Of course, had  ____________________ 7The district court apparently misapprehended the thrust of the Clark case citation to Dean Witter Reynolds, Inc. v. Byrd, _____ __________________________ ____ 470 U.S. 213, 220 n.6 (1985), for the overbroad proposition that enforcement of an arbitration agreement "ousts" a court from jurisdiction over the entire dispute. See Wolf, 1994 U.S. Dist. ___ ____ LEXIS 7627, at *7 (citing Clark, 966 F.2d at 1321). Viewed in _____ context, the Clark citation to Byrd merely emphasized that the _____ ____ Federal Arbitration Act had been enacted to "ensure judicial enforcement of privately made agreements to arbitrate" even if ____ __ that "require[ed] piecemeal resolution when necessary to give _________ __________ effect to an arbitration agreement." Byrd, 470 U.S. at 220-21 ____ (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., _____________________________ ______________________ 460 U.S. 1, 24-25 (1983)) (emphasis added). Thus, in Clark, as _____ here, the district court retained exclusive jurisdiction over the _________ Rule 10b-5 claim absent a written, bilateral agreement to the contrary. Gruntal cites Kelly v. Merrill Lynch, Pierce, Fenner & _____ __________________________________ Smith, 985 F.2d 1067, 1069-70 (11th Cir.), cert. denied, 114 S. _____ _____ ______ Ct 600 (1993), to no avail. There, the "precluding" judgment had 13 Gruntal wished to impress the ensuing arbitral award with preclu- sive effect vis-a-vis the Rule 10b-5 claim, it could have endeav- ored to persuade Wolf to join an arbitral submission. See Ticker ___ ______ v. Trager, 482 N.Y.S.2d 535, 536 (App. Div. 1984) ("No one is ______ under a duty to resort to arbitration unless by clear language he has so agreed.") (quoting Lehman v. Ostrovsky, 264 N.Y. 130, 132 ______ _________ (1934)). III III CONCLUSION CONCLUSION __________ Although Wolf incorrectly represents that the district court ousted or impeded arbitral jurisdiction over the Rule 10b-5 claim, see supra note 2, the district court nonetheless retained ___ _____ exclusive jurisdiction over the Rule 10b-5 claim absent an _________ enforceable arbitral submission encompassing the Rule 10b-5 claim. Consequently, Gruntal was not entitled to judgment as a matter of law, see Jirau-Bernal, 37 F.3d at 3, and the district ___ ____________ court judgment dismissing the Rule 10b-5 claim on claim preclu- sion grounds must be vacated.  ____________________ been rendered by a federal district court presumptively vested with "federal question" jurisdiction over the plaintiff's uncov- ered Rule 10(b)(5) claim, as well as with pendent jurisdiction over his four state-law claims. As the defendant's consent was _______ not necessary to enable plaintiff Kelly to assert his state-law claims in the federal district court action, res judicata did ___ ________ indeed preclude later arbitration of the pendent state-law claims. Id. ___ 14 The district court judgment is vacated. The case is The district court judgment is vacated. The case is _______________________________________________________ remanded for further proceedings consistent with this opinion. remanded for further proceedings consistent with this opinion. ________________________________________________________________ Costs to appellant. Costs to appellant. __________________ 15