Nylsa ACOSTA–OROZCO; Eliudy Jurado–Roque; Lucy Lizasoain; Merida Pagan; Hilda Rivera–Sanchez; Carlos Torres–Huertas, Plaintiffs,

v.

Carmen RODRIGUEZ de RIVERA, Individually and as Secretary of the Social Services Department ("SSD") of the Commonwealth of Puerto Rico; Enrique Gonzalez–Polanco, Individually and as Assistant Secretary in Charge of Personnel of the SSD; Digno Cesar Giraud, Individually and as Guayama Regional Director of the SSD; Israel Quiñones–Espada, Individually and as Ponce Regional Director of the SSD; Gerardo Flores–Colon, Individually and as Caguas Regional Director of the SSD, Defendants.

Civil No. 94–2576 (JAF).

United States District Court,
D. Puerto Rico.

Jan. 27, 1997.

Manuel Alvarado, San Juan, PR, for Plaintiffs.

Mayra Maldonado–Colon, Federal Litigation Division, Department of Justice, Commonwealth of Puerto Rico, Pedro R. Pierluisi, Attorney General, Wilfredo Marcial–Gonzalez, Hector Quijano–Borges, Mendez–Mendez & Quijano–Borges, San Juan, PR, for Defendants.

### OPINION AND ORDER

FUSTE, District Judge.

### I.

### *Facts*

On August 26, 1994, plaintiffs, members of the Popular Democratic Party (PDP), then serving as Managerial Coordinators in the Social Services Department, were demoted to the positions they had previously held in the Department. The plaintiffs were all appointed to the newly-created position of Managerial Coordinator during the administration of Governor Rafael Hernández–Colón, the PDP governor who preceded current New Progressive Party (NPP) Governor Pedro Rosselló, first elected in 1992. Plaintiffs claim political discrimination motivated their demotion by NPP-appointed superiors. Governor Rosselló appointed Carmen Rodríguez de Rivera Secretary of the Social Services Department, who, in turn, appointed defendants César Giraud, Israel Quiñones–Espada, Gerardo Flores–Colón, and Enrique González–Polanco to their trust positions as Regional Directors and as Assistant Secretary in Charge of Personnel, respectively. Three of the plaintiffs had been appointed as candidates without opposition: Nylsa Acosta–Orozco, Eliudy Jurado–Roque, and Carlos Torres–Huertas. The other three plaintiffs, Lucy Lizasoain, Mérida Pagán–Acosta, and Hilda Rivera–Sánchez were appointed as having been previously "acting" in the position despite some question as to such performance. Plaintiffs allege that their supervisors knew of their political affiliation and that an NPP member supplanted their duties.

Secretary Rodríguez de Rivera consulted with the Office of Management and Budget and COPA, the Central Office of Personnel Administration. Without any administrative hearing, Secretary Rodríguez de Rivera sent each Managerial Coordinator a letter on August 26, 1994, demoting them to their previously-held positions in the Social Services Department. All plaintiffs, except for Hilda Rivera–Sánchez, who retired, are currently working in the positions to which they were demoted.

## II.

### *Legal Standards*

#### A. *Summary Judgment*

The standard for summary judgment is straightforward and well-established: A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and "genuine", "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the nonexistence of a "genuine" issue as to a material fact is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and, (2) an ultimate burden of persuasion, which always remains on the moving party. *Id.* Although the ultimate burden of persuasion remains on the moving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties;" the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. Likewise, a nonmovant will not normally defeat the motion by discrediting testimony presented by movant. *Id.* at 256–57, 106 S.Ct. at 2514–15. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Summary judgment exists to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Medicine*, 976 F.2d 791, 794 (1st Cir.1992).

In complex discrimination cases, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). A political discrimination plaintiff may avoid summary judgment by demonstrating that a jury could rationally determine that the employment change stemmed from discriminatory treatment. *Nereida–González v. Tirado–Delgado*, 990 F.2d 701, 706 (1st Cir.1993). These actions must, at least substantially, if not primarily, result from political affiliation. *See Acevedo–Díaz v. Aponte*, 1 F.3d 62, 66 (1st Cir.1993); *Avíles–Martínez v. Monroig*, 963 F.2d 2, 5 (1st Cir.1992); *Agosto-de-Feliciano v. Aponte–Roque*, 889 F.2d 1209, 1220 (1st Cir. 1989). *See also Rivera–Cotto v. Rivera*, 38 F.3d 611, 614 (1994). There must be a direct causal connection between political affiliation and the change in employment. *LaRou v. Ridlon*, 98 F.3d 659 (1st Cir.1996), *citing Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 58 (1st Cir.1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir.1989).

#### B. *First Amendment Claim*

Current interpretation of the First Amendment proscribes the firing of nonpolit-

ical civil servants by patronage-happy elected officials for political reasons. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The First Circuit's response to a wave of political discrimination litigation from Puerto Rico, *Agosto-de-Feliciano,* 889 F.2d 1209, elaborated on the two prior Supreme Court decisions, setting the general standard of review in these cases for this Circuit. That case enunciated a two-prong test and a defense to a finding of discrimination. The first prong requires a finding of "constructive discharge," which can be proven in several ways, principally by showing that the plaintiff's new work is "unreasonably inferior to his prior position." *Id.* at 1218. The protection provided in the First Circuit against constructive discharge because of employment discrimination was extended to demotion and other substantial changes in employment under *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). Evidence of the job disturbance, even if that disturbance may now be less egregious than required by *Agosto-de-Feliciano,* should be clear and convincing. *Agosto-de-Feliciano,* 889 F.2d at 1220; *Rodríguez-Pinto* 982 F.2d at 38 n. 5. The second prong requires that plaintiff prove a causal connection between alleged political differences and the change in employment, and that this discrimination be demonstrated by a preponderance of the evidence. *Id.* at 1220; *LaRou,* 98 F.3d at 661–62, *citing Correa-Martínez,* 903 F.2d at 58.

■ Once these two tests have been met, the government actors may proffer either or both of two defenses: 1) a "but for" defense, and 2) proof that the position was a "trust" position. First, a demonstration that the changes would have occurred regardless of political affiliation rebuts a charge of discrimination. *Id.; Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Legitimate examples include firing for unsatisfactory work performance or bona fide reorganization. *Nereida–González,* 990 F.2d at 706 n. 4. This defense must be proven by a preponderance of the evidence. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Agosto-de-*

*Feliciano,* 889 F.2d at 1220. Relatedly, the First Circuit provides administrations with the "changeover" defense, which allows them a certain degree of freedom in enforcing new policies. *Id.* at 1220–22.

■ The second defense, regarding the nature of the employment, holds that whereas a career employee can be discharged only for "good cause," 3 L.P.R.A. § 1336(4) (Supp. 1987), an employee who holds a trust position normally can be readily removed, even for political reasons, 3 L.P.R.A. § 1350 (1978); *Ortiz–Piñero v. Rivera–Arroyo,* 84 F.3d 7, 12 (1st Cir.1996).

Some question has arisen as to the continued viability of the *Agosto-de-Feliciano* rule in the wake of *Rutan. See Nereida–González,* 990 F.2d at 705; *Rodríguez–Pinto v. Tirado–Delgado,* 982 F.2d 34, 42 (1st Cir. 1993) (Torruella, J. concurring). *See also* Susan Lorde Martin, *Patronage Employment Decisions After Rutan,* 23 U.Tol.L.Rev. 63, 79 (1991). The First Circuit has not decided this issue, *see Rodríguez–Pinto,* 982 F.2d at 38 n. 5, but we infer, as noted above, that *Rutan* principally expands the scope of employment situations that qualify as a harm for First Amendment employment analysis to those specified by *Rutan.* The other elements of *Agosto–de–Feliciano* stand, *see Nereida–González,* 990 F.2d 701, 706 n. 4, with the possible exception of the changeover defense. *Rodríguez–Pinto,* 982 F.2d at 42 (suggesting that the changeover defense is particularly weakened by *Rutan,* as Chief Judge Torruella argued). However, this unresolved issue does not impact our analysis, since our analysis of the defenses relies instead on *Mt. Healthy.*

### III.

### *Analysis*

#### A. *Change in Employment*

■ No fact material to the outcome of this case is in conflict. The first element requires an exploration of whether the change in employment was significant enough to be actionable. There must be clear and convincing evidence that there has been a substantial change in employment

that gives rise to a constitutional claim. *Agosto-de-Feliciano,* 889 F.2d at 1220. Neither party contests that the plaintiffs have experienced a significant change in employment, since plaintiffs were demoted to their prior positions on August 24, 1994. All plaintiffs were demoted to the posts held prior to the creation of the Management Coordinator positions.

### B. *Political Motivation for the Change in Employment*

The second element requires examination of whether the changes in employment were motivated by political reasons. Here the plaintiff is required to show that "a causal connection exists linking defendants' conduct, as manifested in the adverse employment decision, to plaintiff's politics." *LaRou,* 98 F.3d at 661–62, *citing Correa–Martínez,* 903 F.2d 49, 58. This causal connection must be direct: "Merely juxtaposing a protected characteristic—someone else's politics—with the fact plaintiff was treated unfairly is not enough to state a constitutional claim." *Id., citing Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir. 1989). Party difference across the adversarial line acts as the principal evidence relied on by plaintiffs. Plaintiffs also generally allege that once returned to their previous position, NPP members took up their former responsibilities. Facially, the melange of these facts suggests we regard defendants' actions with more suspicion. The aligning of the existence and awareness of political differences and the transfer of former duties to NPP members does not in itself provide a necessary, direct causal relationship between the political identity and discrimination.

Plaintiffs suggest that political differences among the adversarial parties created a politically-charged atmosphere. For example, several of the plaintiffs claim that they are party activists and that the defendants were equally activist in the NPP. *Docket Document No. 36.* However, such an atmosphere may not be equated with political discrimination in employment: In the *Correa–Martínez* case, the First Circuit noted that a "politically charged atmosphere ... without more, provided no basis for a reason-able inference that defendants' employment decisions about *plaintiff* were tainted by their disregard of *plaintiff's* first amendment rights." 903 F.2d at 58. Further, entirely pedestrian is the politically-charged atmosphere in a society as deeply cleaved along political lines as Puerto Rico. What distinguishes such an atmosphere from a discrimination case is causation. Convincing evidence of such direct causation is lacking.

### C. *Defenses*

Indeed, the inference of motivation to be drawn from the wholesale demotion of an entire class of employees may be readily explained as the defendants do, which brings our discussion to the defenses against this charge. Despite the weakness of the basic discrimination case, we examine the defenses to confirm our finding. The first defense we will examine is whether the positions were "trust" rather than career positions. Whereas an employee who holds a trust position normally can be readily removed, 3 L.P.R.A. § 1350 (1978), a career employee can be discharged only for "good cause." 3 L.P.R.A. § 1336(4) (Supp.1987). Politics is a legitimate basis for a change in employment against a trust employee. *Ortiz–Piñero v. Rivera–Arroyo,* 84 F.3d 7, 12 (1996). "Although obviously fact-intensive, the ultimate determination whether a government position is "political" presents a question of law for the court, rather than an issue of fact for jury resolution," *Id., citing McGurrin Ehrhard v. Connolly,* 867 F.2d 92, 93 (1st Cir.1989) (Breyer, J.) (noting that the *Branti/Elrod* exception would be more suitable for determination by the court).

Close inspection of the claim here reveals a logical inconsistency in the plaintiffs' case. The unknown party affiliation of the nonplaintiff members of the class of managerial coordinators leads to two possible inferences: Either the rest of the class of managerial coordinators are also PDP members, or there is more political diversity among nonplaintiffs than among plaintiffs. If all managerial coordinators were PDP, this very fact would bolster defense assertions that the position was illegally created and that the position was one of "trust". The

exclusive presence of members of one party in a "career" government position would indicate that the position in question served some political purpose, and was thus a "de confianza," or trust position. If the position of managerial coordinator constituted a legitimate career position, as the defendants claim, it would stand to reason that the people in such employment would be drawn from all political parties, given the decidedly partisan schism among members of Puerto Rico's three political parties.

Were there political diversity among the class of Managerial Coordinators, on the other hand, that very fact alone would mean that the firing of the class was not politically discriminatory, since members of all parties would have suffered, removing the disparate impact necessary for a discrimination argument. Lack of knowledge on this issue does not impair this court's ability to decide this issue on the law, since it lends credibility to the *Mt. Healthy* defense, which we now address.

 This *Mt. Healthy* "but-for" defense permits administrations to argue that a legitimate policy reason motivated the change. The purpose of this defense is to guarantee that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Elrod*, 427 U.S. at 367, 96 S.Ct. at 2687, *cited in Ortiz Piñero v. Rivera–Arroyo*, 84 F.3d 7, 12 (1996). A district court's findings regarding a *Mt. Healthy* defense is subject to reversal only if clearly erroneous. *Acosta–Sepúlveda v. Hernández–Purcell*, 889 F.2d 9, 13 (1st Cir.1989); *See e.g., Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1, 2–3 (1st Cir.1987). In *Jirau–Bernal v. Agrait*, 37 F.3d 1 (1st Cir. 1994), the First Circuit held that a "plaintiff still will prevail if it is found that she would not have been fired but for her political affiliation." *Id.* at 3, *citing Acosta–Sepúlveda*, 889 F.2d at 13. In *Acevedo–Díaz*, 1 F.3d 62, 66–67 (1st Cir.1993), the First Circuit, faced with a summary judgment motion by defendants arguing efficiency as the policy reason behind a contested demotion, stated that summary judgment would have been warranted only if defendants' evidentiary proffer compelled the finding that political discrimination did not constitute a "but for" cause for the demotion. *Id.* at 68.

 Here, a preponderance of the evidence indicates that the demotion succeeded a *bona fide* reorganization, *Nereida–González*, 990 F.2d at 706 n. 4, a legitimate policy decision based on departmental efficiency and a respect for governmental structures. Such credible policy reasons for the employment decision would forestall a finding of "but-for" discriminatory animus. The fact that the entire class of Managerial Coordinators was eliminated alone indicates that the demotion resulted from a restructuring of the Department. Second, defendants convincingly argue that the duties of the Regional Director and already-employed assistants subsume so many of those of the Managerial Coordinator position; any regard for departmental efficiency would have prevented the creation of the superfluous post of Managerial Coordinator. *Docket Document No. 28,* at 3. Specifically, the effects of the creation of this post were "unnecessary duplication of functions, a bad utilization of human resources, and undue expenditure of public funds." *Id.*

The defendants also argue that the position of Managerial Coordinator was created and filled illegally, rendering the post a "nullity". Much evidence supports this argument, including internal and external letters. First, two letters from the Office of Budget and Management indicate that they not only are required by law to authorize the creation of new positions, but that they have no record of such authorization with regard to the Managerial Coordinators. *Docket Document No. 32.* Internally, the Department of Social Services generated two detailed studies, signed by Francisco Cappas, one concerning the position generally, and another concerning the histories and qualifications of the Managerial Coordinators. *Id.* These documents evince a principal concern for the effectiveness of the department's structure. Lastly, Secretary Rivera's investigations into the legitimacy of the positions with the Central Office of Personnel Administration and other agencies, including the Department of

440

Justice, hint at the respect for the legality of her employment decisions.

 The nullity of the appointments cannot *sua sponte* dispose of the First Amendment claim. Even if the hiring of an employee occurred against established regulation, firing that person on the basis of political identity still violates the First Amendment associational rights of the employee. *Acevedo–Diaz,* 1 F.3d at 68 n. 5. "We do not think that a new administration can use the 'nullity' of appointments doctrine as a cover for discharges, transfers, and discrimination based solely on political affiliation." *Santiago–Negrón v. Castro–Davila,* 865 F.2d 431, 436 (1st Cir.1989), *cited in Hiraldo–Cancel v. Aponte,* 925 F.2d 10, 13 (1st Cir.1991). Defendants proffer this argument as a *per se* justification of the demotion. We, however, interpret this evidence differently, in accordance with the First Circuit law cited above—we view the "nullity" argument as evidence of a legitimate policy-based employment decision. This evidence further strengthens defendants' position that legitimate bases underlie the decision to demote the Managerial Coordinators. Preserving the integrity of the bureaucratic processes, in addition to the appropriate reorganization and the efficiency goals served by this change, demonstrate that the government's purpose was primarily policy and not prejudice.

## IV.

### *Conclusion*

Plaintiffs' argument, beset with logical inconsistencies, fails to demonstrate that political differences and a politically-charged atmosphere directly resulted in their demotions. Even if the plaintiffs' case were strong, legitimate policy bases supported the demotions, providing a successful *Mt. Healthy* defense. We, accordingly, **GRANT** defendants' motion for summary judgment.

**IT IS SO ORDERED.**